Jewett *v.* Guyer et al.

---

\*CHARLES JEWETT *v.* GUY H. GUYER AND IRA DWINNELL.

*Execution. Sheriff. Sheriff's Sale. Homestead.*

When there is such a taking of property by an officer on execution as would be sufficient for a good levy, *it is immaterial whether this levy is made in continuation of a lien of a previous attachment, or not, as the lien created by the attachment cannot be adverse to the lien on the same property created by the levy,* both being made on process in the same suit.

The return on an execution, stating that a copy, &c., was left in the town clerk's office, was held defective in omitting to state that a copy, &c., with the officer's *return of levy thereon,* was left, &c.; *and on account of the defect no lien would be created as against a subsequent sale, attachment or execution;* but as against the debtor in the execution, this was a sufficient taking of the property in execution to support the subsequent proceedings of advertising and sale.

The same degree of certainty that would be sufficient by way of description of the property in a declaration in trover, trespass or replevin, would be a sufficient *statement of the subject matter of the levy and sale in an officer's return on an* execution.

Where the levy was upon hay, and the description was by stating the quantity, it was *held,* that in case of controversy as to the particular hay taken, it might be determined by extrinsic evidence.

Where the return is informal in not stating the town in which the levy was made, except by inference, it is *held* that, until the contrary appears, the presumption will be in favor of the regularity of the officer's proceedings, that the property was levied on in the same town where it was advertised and sold.

An officer may, in the exercise of a sound and reasonable discretion, change by adjournment both the *time* and *place* appointed for the sale of property taken in execution, provided it be to a place which he was authorized to appoint as the place of sale in the first instance.

---

\*This case was heard at the August Term, 1864.

*A change of possession in the sale of personal property, the product of the vendor's homestead, being unnecessary to protect it from attachment by the creditors of the vendor, it is *held*, that in case of such attachment the purchaser has a right to insist that the question in respect to what should be considered as coming within the homestead exemption, should be determined on the same principles which would be applicable if it were a question between the attaching creditor and the debtor; and no laches can be imputed to the purchaser on account of the neglect of the debtor to make a claim which he might have made in respect to the property when attached or taken in execution.

Under the statute the products of a homestead are exempt from attachment and execution absolutely and without any qualification or exception, even if the debtor has received an equivalent from other portions of his possessions.

TRESPASS for taking and carrying away a quantity of hay.  Plea, the general issue, and notice of special matter.  Trial by jury, De_ cember Term, 1863, ALDIS, J., presiding.

It appeared that prior to the 9th of May, 1861, one Eli Jewett owned a farm consisting of two lots, one on each side of the highway, and upon one, called the Hogg lot, stood his house, and upon the other, called the Campbell lot, stood his barn; that in De cember, 1860, Charles Jewett, Jr., recovered judgment against said Eli and took out execution, and the same was duly levied upon the Campbell lot upon which said Eli's barn stood, which was heavily incumbered by mortgages, and the same was duly appraised and set off to the said Charles on the 9th May, 1861; evidence was offered to show that the said Eli then informed said Charles that this lot was so heavily incumbered and his circumstances such he should not attempt to redeem it, and would then surrender the actual possession to him which he accepted, but nothing concerning the surrender appeared of record.  There was evidence also tending to show a possession of this lot in said Charles, and also in said Eli.  It appeared that the hay sued for was sold by said Eli to the plaintiff in the season of 1861, while standing on the said Eli's other lot, and was stored in said barn by special permission of said Charles, in such manner as to keep it separate from all other hay in the barn, and was cut by the plaintiff.  It appeared also that no proceedings had ever been taken by which a homestead of the value of $500. had ever been set out to the said Eli in the lot upon

*The homestead questions in this case are determined under the act of 1849. (C. S., p. 390, ch. 65.)

which his house stood or anywhere else, and that he had never in any way selected one. The defendants admitted the taking of the hay, but attempted to justify under an execution issued on a judgment recovered by one H. H. Powers against said Eli, on which the defendant Guyer, as deputy sheriff, sold the hay to the defendant Dwinnell. The constable who served the writ in the case of Powers against said Eli, stated in his return thereon that he served said writ by attaching as the property of the defendant "all the hay and grain in the barns and sheds on the premises where the defendant resides in Hyde Park," and that he left a copy in the town clerk's office, &c. It was objected to by the plaintiff's counsel that under the circumstances in which the hay sued for was situated, this return showed no such attachment of it as to create any lien thereon. But the court overruled the objection, and held that it did create a lien on the hay. The execution issued on the judgment as aforesaid in the case of Powers against the said Eli Jewett was put into the hands of the defendant Guyer, who was deputy sheriff, and his return thereon is partially set forth in the opinion of the court. It appeared from the return that the sale of the hay taken in execution was adjourned by the officer from Keeler's Hotel to the barn where the hay was stored, a distance of about three miles.

No proof was offered in connection with said execution, that the hay sued for was ever demanded of R. D. Bennett, the constable who first attached the hay, or any other person, after the execution came into the hands of Guy H. Guyer or before; nor did it appear that the said Guyer took any actual possession of the hay, or attempted to interfere with it in any way, except to put a copy into the town clerk's office and advertise it for sale, until the day on which it was sold to the defendant Dwinnell as stated in the return. The plaintiff's counsel objected to the execution and the return thereon, that it did not show that the hay sued for was ever *taken in execution*, or that the said Guyer as deputy sheriff ever took such possession or control of it, that he could legally proceed to advertise the same for sale on said execution and to sell the same; and also that the said Guyer could not legally adjourn the sale in the manner stated in his return, under the circumstances of the situation of the hay and the place at which it was advertised to be sold. But the

court overruled all these objections, and allowed the execution and return thereon to go to the jury with instructions that there was a valid sale of said hay on the execution. The question as to whether the plaintiff took sufficient possession of the hay to make his title good as against the creditors of Eli, was submitted to the jury with instructions to which no objection was taken.

It further appeared that nothing was said or done between Eli Jewett and Guyer while he held said execution, to ascertain if said hay or any part thereof was the product of the homestead of the said Eli. It also appeared that the cause of action upon which the judgment was recovered by Powers first existed on the 26th of February, A. D. 1861.

It also appeared that the homestead had never been set out, nor anything done to indicate what part of the land or how much was or would be claimed by Eli as homestead.

Testimony was introduced tending to show what part of the lot, on which said Eli's house stood, it would take to make a homestead worth $500. Other facts and the charge of the court are sufficiently stated in the opinion. To the part of the charge relating to a homestead and its products, in quantity and value, the plaintiff excepted. Verdict was returned for the defendants.

*Brigham & Waterman* and *George Wilkins*, for the plaintiff.

I. The hay was not properly taken in execution, and the defendant Guyer never acquired such a lien upon it that he could legally proceed to advertise and sell the same. The original attachment was made by R. D. Bennett, a constable, and it was necessary for Guyer, when the execution was lodged in his hands, to make a demand of Bennett, in order to charge the property in execution. This he omitted to do. *Burroughs* v. *Wright et al.*, 19 Vt. 516. It is well settled that when property has been attached by one officer, and is in his custody, no subsequent attachment of the same property by another officer will operate to create a lien upon it. *Watson* v. *Todd*, 5 Mass. 271; *Vinton* v. *Bradford*, 13 Mass. 114; *Thompson* v. *Marsh et al.*, 14 Mass. 269.

II. The adjournment of the sale was illegal. The property must be advertised at some public place, and sold *at such public place.* G. S. 362, § 4; C. S. 310, § 3; *Drake* v. *Mooney*, 31 Vt. 617.

III.   The return of the officer on the execution does not describe the property with sufficient certainty, and the levy was therefore invalid.   In order to give an officer the constructive possession of property attached by leaving a copy in the town clerk's office, it must be described at least with reasonable certainty.   *Bucklin* v. *Crampton*, 20 Vt. 263 ; *Baxter* v. *Rice*, 21 Pick. 197.

IV.   The court erred in the instructions to the jury touching the homestead.   G. S. 456, §§ 1, 2, 4 ; C. S. 390, §§ 1, 2, 3 ; Sedgwick on Stat. and Con. Law, 306, *et seq.*, and the cases there cited.

*Powers & Gleed*, for the defendants, maintained, 1st, that the surrender was insufficient to shield the property from the creditors of Eli Jewett.   2d.   The attachment of the hay on the writ in favor of Powers created a valid lien as against the plaintiff,—the property was sufficiently described to give notice to the world that the hay was in the custody of the law.   *Fullam et al.* v. *Stearns et al.*, 30 Vt. 443.   3d.   The hay was properly taken in execution,—the question here is not between two public officers making successive attachments of the same property where greater formalities might be required.   Every presumption is to be made in favor of the regularity of the officer's proceedings, and although the officer has inadvertently omitted to state that the copy left with the town clerk had his return upon it, the court will infer that the copy left was such as it was the officer's duty to have left, *i. e.*, with a proper return thereon, *Collins* v. *Perkins*, 31 Vt. 624.   But whether the original attachment was valid or not, the defendant Guyer holding the execution found the property in Eli's possession, and without regard to prior proceedings had the right to seize it and sell it as he did.   4th.   The adjournment of the sale from Keeler's •to the barn was proper. *Wood* v. *Doane*, 20 Vt. 612.   If the proceedings of Guyer were in any respect informal, still Dwinnell's title is to be protected.. *Wood* v. *Doane.*   5th.   The charge of the court as to the homestead was as favorable to the plaintiff as he could ask for.

The opinion of the court was delivered by

KELLOGG, J.   We think that no question necessarily arises in this case in respect to the validity of the attachment of the hay in controversy, made on the original writ in favor of Powers, the execu-

tion creditor, against Eli Jewett, the execution debtor, because the creditor had just as good a right to levy his execution on the hay as he had to attach it on the original writ in the first instance. If there was such a taking of the property by the officer on the execution as would be sufficient for a good levy, it is immaterial whether this levy was made in continuation of the lien of the previous attachment, or not. The lien of the attachment would cease when the property was taken on the execution, and both the attachment and the levy were made on process in the same suit, and the lien which the attachment created could, under no circumstances, be treated as adverse to a lien on the same property acquired by the levy on the execution. The question is not between creditors holding adverse liens on property under successive attachments or levies, made by the same officer or by different officers, but stands on an entirely different footing. The material inquiry is whether the property was properly taken in execution. We think that the taking of such property in execution requires some distinct act or proceeding on the part of the officer to indicate his intention to pursue the property for the purpose of satisfying the execution. As against subsequent attachments, or a *bona fide* purchaser, it would be necessary that the officer should take and maintain the actual possession or control of the property, or that he should leave a copy of the execution, with his return stating the levy, in the town clerk's office in the town where the property is taken,—this being made by the statute, in the case of an attachment or levy on hay and certain other articles, equivalent to an actual possession of the property by the officer against all subsequent sales, attachments or executions. (Comp. Stat., p. 244, § 20; Gen. Stat., p. 292, § 25.) The defendant Guyer, who, as deputy sheriff, held the execution in favor of Powers against Eli Jewett for collection, after stating in his return on it a demand of the debtor of the amount due on, and required to be levied by it, and the debtor's neglect to pay the same, further states as follows, viz : " I lodged a true and attested copy of the original execution in the town clerk's office in said town of Hyde Park, and I seized by virtue thereof seventeen tons and three hundred and fifty pounds of hay," &c. The return is defective in omitting to state that a copy of the execution with the officer's *return of levy thereon*

was left in the town clerk's office, and, on account of this defect in the return, no lien could be considered as created by the leaving of the copy in the town clerks office as against a subsequent sale, attachment, or execution within the meaning of the statute, nor could the debtor be made a trespasser for taking and disposing of the property without distinct notice from the officer of the taking of the property in execution. But notwithstanding the proceeding might be unavailing to create a valid lien on the property as a constructive notice of the levy, we think it was such an indication of the intention of the officer to pursue the property for the purpose of satisfying the execution as would justify him in advertising the property for sale, and that, as against the debtor in the execution, this was a sufficient taking of the property in execution to support the subsequent proceedings. *Bucklin* v. *Crampton*, 20 V. 261; *Fletcher* v. *Cole*, 26 Vt. 170. The debtor is the only person who can take advantage of an irregularity in the levy, as the plaintiff stands upon a prior title to the property. If there was any controversy in respect to the particular hay which was taken on the execution, it might be determined by extrinsic testimony. We regard the description in the officer's return as being sufficient in this respect. In many cases it might be impossible to describe property otherwise than by a statement of quantity or number, and the same degree of certainty which would be sufficient by way of description of the property in a declaration in trover, trespass, or replevin, should be treated as a sufficient statement of the subject matter of the levy and sale in an officer's return on an execution. The officer's return is informal in not stating the town in which the levy was made except by inference; but we think that, until the contrary appears, we ought to presume in favor of the regularity of the officer's proceedings, that the property was levied on in the same town where it was advertised and sold. *Beattie* v. *Robin*, 2 Vt. 181; *Drake* v. *Mooney*, 31 Vt. 617. There would be no presumption to the contrary, in the absence of proof; and, independently of any presumption, it distinctly appeared from the evidence on the trial that the levy was made in the town where the property was advertised and sold.

The property was duly advertised by the officer for sale, but it is claimed that his adjournment of the sale was illegal. The statute

provided that the property should be advertised and sold in the town where it was taken, and the officer was authorized to sell the hay taken on the execution, either at the place where it was kept by him or at the public place in the town at which his advertisement of the sale was set up, and it was further provided in the statute that the sale should be "at the time and place appointed." Comp. Stat., p. 310, §§ 5, 6 ; Gen. Stat., p. 362, §§ 4, 5.) The property was taken by the officer in the town of Hydepark, and advertised to be sold at the inn of N. P. Keeler in that town, on the 4th November, 1861, at nine o'clock in the forenoon. At the time and place appointed for the sale by the advertisement, the sale was adjourned by the officer to be held at a place in the same town where the hay was then kept, which was also the same place where the hay was when it was taken on the execution. Was this adjournment of the sale legal? There is no power to adjourn a sale of property taken in execution conferred on the officer by any express provision of the statute, but we think that there are many cases in which the power must be implied as a matter of necessity. It might require several days to complete a sale, and no bidders might be present at the appointed time, and the character and situation of the property and the interests of the parties might require that the sale should be postponed. The authority of an officer to adjourn a sale in the exercise of a sound and reasonable discretion has been so long and so universally recognized in practice, that it ought not now to be questioned. And if the *time* appointed for the sale may be changed by the adjournment, there would seem to be no reason why the *place* of sale might not also be changed; provided that it is changed to a place which the officer was authorized to appoint as the place for the sale in the first instance. No conceivable purpose of the statute is affected by such a change in the *place*, any more than it would be by a change in the *time*, appointed for the sale. In the absence of evidence to the contrary, the legal presumption is that the adjournment of the sale in this case was an open and public adjournment, made in good faith, and in the exercise of a sound and reasonable discretion. The place appointed for the sale by the adjournment was one which might lawfully have been appointed for the sale in the original notification of it, and we regard the adjournment as being a legal act on the part of

the officer, notwithstanding it changed the *place* as well as the *time* originally appointed for the sale.    *Wood* v. *Doane*, 20 Vt. 612 ; *Drake* v. *Mooney*, 31 Vt. 617.

The plaintiff claims that the county court erred in the instructions given to the jury in respect to the homestead exemption to which Eli Jewett, the execution debtor, was entitled in the premises on which the hay in controversy was cut.   The question in respect to the application and effect of this homestead exemption arises and is to be determined under the original act of 1849, (Comp. Stat., p. 390, chap. 65,) as the hay was cut in the season of 1861, while that act was in force.   The homestead law contained in the General Statutes now in force is an entirely new act in respect to the same subject matter, which supplies many of the defects of detail, and clears up or obviates many of the perplexities and difficulties, imputed to the former act, but it has no application in determining rights which accrued before it went into effect.   By the act of 1849, the homestead of the execution debtor, consisting of the dwelling house occupied by him as a homestead, out-buildings, and lands appurtenant, to the value of five hundred dollars, and the yearly products thereof, were exempted from attachment and execution and provision was made for ascertaining and setting out the homestead and its annual products when levied on or taken in execution, if the exemption was claimed by the execution debtor.   In both statutes, the house-keeper or head of a family entitled to the homestead exemption is allowed the right to designate and choose the part of his real estate from which it is to be taken, and to which it is to apply, if the election is made at the time of the levy of the execution, but no mode is provided in either statute for ascertaining and setting out the annual products of the homestead except in a case in which the debtor, at the time of the attachment or taking in execution, makes a claim that such products are the products of his homestead.   It does not appear that there was any such claim made by the execution debtor when the hay which is the subject of this controversy was levied on and sold.   If the plaintiff purchased grass from the debtor which was the product of the homestead to which the debtor was entitled, it would stand like any other property exempted from attachment and levy on execution ; and in the case of such property, no change of posses-

sion is necessary on the sale of it to protect it from attachment by the creditors of the vendor. *Foster* v. *McGregor et al.*, 11 Vt. 595. The homestead exemption has been repeatedly recognized in this court as being humane in its character, and the statute should receive a liberal construction in view of the objects aimed at by it. *True* v. *Morrill*, 28 Vt. 674 ; *McClary et al.* v. *Bixby, Adm'r, et al.*, 36 Vt. 254. The exemption of the annual products of the homestead from attachment and execution is as distinctly and absolutely declared in the statute as is the exemption of the homestead itself, and it was intended as a substantial privilege or benefit to the person on whom it was conferred. It applies to the products of the homestead alone and not to an equivalent in kind, quantity, or value in the products of some other parcel of land ; and whenever a claim is made by the debtor that personal estate attached or taken in execution, or any part thereof, is the produce of his homestead, the limits of the homestead are to be ascertained and determined by appraisers as a necessary preliminary to the decision of the claim. (Comp. Stat., p. 391, § 3.) The plaintiff, who is a purchaser from the execution debtor, has a right to insist that the question in respect to what should be considered as coming within the exemption should be determined on the same principles which would be applicable to it if it were a question between the attaching creditor and the debtor. He cannot be considered as waiving or losing any right, or as being estopped from asserting his claim, by reason of the neglect of the debtor to make a claim which he might have made in respect to the property, because no laches can be imputed to him. He was not a party to the execution or to the proceedings under it, and it is his right now to claim that the hay which he purchased of the debtor was the product of land which, on proper proceedings, would have been set out to the debtor as a homestead, and that, as such, it was exempted from attachment and levy on execution as the debtor's property. In deciding upon this claim, when made by the plaintiff on the trial, the attention of the jury should have been directed to the same inquiries which would have been made by appraisers if the debtor had made the same claim when the property was taken in execution ; and those inquiries would have been, what should be considered as the limits or boundaries of the debtor's homestead right,

and whether the property levied on, or any part of it, was the product of the land situated within those limits.   The county court charged the jury that the debtor was entitled to all the products of a homestead of the value of five hundred dollars, to consist of the house and out-buildings and land occupied by him in connection therewith ; that he had a right to sell the standing gra﹖﹖ on the homestead, and that though the plaintiff, after cutting it, left it in the debtor's possession, still the purchase by the plaintiff would be valid as against the debtor's creditors without any change of possession ; and that, as no homestead had been marked out or claimed separately by the debtor, and nothing had been done to indicate what was, and what was not the homestead, it would be the duty of the jury, in estimating the homestead and its products to which the debtor was entitled, to allow him a homestead on such part of the land connected with the buildings as he would be likely to choose, and such as would be most conducive to his comfort, convenience and profit, and such a piece as would by itself be fully worth five hundred dollars in cash.   We regard this part of the charge as being a sound and just exposition of the law in respect to the right of the debtor in the homestead and its products ; but the court further instructed the jury, in substance, that if they found that the debtor had in fact received an amount of products for his own use from his other land, out of which the homestead would be taken, equivalent to that which would have grown on such homestead if actually set out, they need not go into the inquiry whether, in setting out a reasonable homestead, its boundaries would include the land on which the hay in question was cut ; but that if the grass cut by the debtor on his other land did not amount to as much as would be equivalent to the product of his homestead, then the plaintiff would be entitled to recover for so much of the hay cut on the homestead as would be necessary to make up the deficiency in the amount which the debtor was entitled to have exempted.   This was in effect an instruction to the jury that the debtor should not be treated as entitled to the products of the homestead if he had received an equivalent from other portions of his possessions.   We regard the statute as exempting the products of the homestead from attachment and execution absolutely and without any qualification or exception ; and, with this impres-

sion in respect to the character of the exemption, we think that this part of the charge was wrong. However just the rule which it lays down may be in its application to such cases, we do not find it in the text of the statute, and we do not regard it as falling within any reasonable interpretation of the plain and intelligible terms on which the statute declares the exemption. Under the whole charge of the court the jury might have found that all of the hay now in controversy was cut within the limits of the land which they would have treated as being the debtor's homestead; and yet, if they found that the debtor had received an equivalent amount of products from his other land, they would not have been at liberty, even in that case, to treat this hay as being the product of the homestead. In other words, the jury, under the charge of the court, might have found that this hay was in fact the product of the debtor's homestead, but that, by legal implication and construction, it should be treated as being the product of some other portion of the debtor's possessions.

Judgment of the county court for the defendant reversed, and a new trial granted.