JOEL C. HASKINS *v.* R. W. BENNETT AND D. W. KIMBALL.

*Attachment.    Exemptions.    Estoppel.*

Under section 13 of chapter 47 of the General Statutes and the amendment thereof in 1866, a debtor may select from his oxen and steers the yoke he would keep exempt from attachment; and where an attachment is made in his absence, may claim the benefit of the statute upon his return.

Where a debtor told his creditor, upon being requested to pay the debt, that he had several thousand dollars worth of property, and had two yoke of oxen and other property that could be attached, and that he should pay soon, and the creditor shortly after sued and attached one yoke of oxen, leaving the yoke, as he supposed, that would be most serviceable to the debtor, it was *held* that said declarations of the debtor would not estop him from claiming the yoke attached as exempt.

THE referee to whom this case* was referred reported as follows:

"The plaintiff, J. C. Haskins, owned and occupied a steam saw-mill, situated on the mountain in Stamford, and had been running the same for some time previous to the 6th day of December, 1866 ; said Haskins was embarrassed, and since the 6th day of December, 1866, has been insolvent.

"The defendant, Bennett, had a debt against said Haskins, amounting to about the sum of $130, and called on Haskins for pay on the 23d day of November, 1866, and told Haskins that he must have his pay ; that he understood he had been sued, and he must pay or secure him. Whereupon Haskins told Bennet that he had not been sued; that he was perfectly good; that he did not owe but about four hundred dollars, and that he had as much as five thousand dollars of property; that he had two yoke of oxen and other personal property which could be attached, and that he should pay him soon. This conversation was at North Adams. At this time said Haskins had been sued by one Wheeler, who had caused one yoke of oxen to be attached. Said Wheeler's writ was served the 10th day of November, 1866, and his debt was about fifty dollars. Haskins had procured one Edwards to receipt the oxen so attached, and both yoke were in possession of said Haskins and used in his business up to said 6th day of December, 1866. On the 5th day of December, the defendant Bennett procured a writ of attachment against said Haskins, and gave it to the defendant Kimball, who was constable of Pownal,

*This action was probably trespass or trover, but it did not appear what it was, or at what term of court it was tried.                    REPORTER.

with authority to serve writs throughout the state, to serve, and told him to attach personal property. Kimball on the same day went to Haskins' mill, and found both yoke of oxen there, but Haskins was in North Adams, and he returned without making service. On the next day, the 6th of December, Kimball went again to the mill, Haskins still being in North Adams. Both yoke of oxen were still at the mill. One yoke were a pair of red oxen which I find were then worth the sum of one hundred and seventy-five dollars, the other yoke were a pair of stags, which I find were then worth one hundred and twenty-five dollars. The hands were working the stags, and Kimball attached the red oxen and drove them out on to the county road, as it is called, to one Benjamin Kimball's (a brother of the officer) and left them there to be kept till he called for them. The stags, which Kimball left at the mill, were being used by the hands when he took the oxen, and the oxen were then standing idle, one of them being lame, but the oxen had been in use the fore part of the day, before Kimball arrived there. The stags had been attached on Wheeler's debt and receipted by Edwards, as above.

"On the 8th of December, Kimball (the officer) went to the mill and saw Haskins. Haskins had then just returned from North Adams. Both yoke of cattle were then at Benj. Kimball's, the stags, in the intervening time, having been attached a second time, and taken there.

"While D. W. Kimball and Haskins were talking, Benj. Kimball came there. Haskins said he wanted the oxen receipted; that he should pay the debt in a day or two, and procured Benj. Kimball to receipt them, on condition that Benj. Kimball should keep them in his possession, and Haskins pay him a dollar a day for keeping, till the next Monday; Haskins at the same time told D. W. Kimball that he could not hold the oxen; that the stags had been previously attached, and that the law gave him a right to a team, but he should settle up Bennett's debt. Bennett's writ against Haskins, on which the oxen were attached, was made returnable before H. Myers, Esq., on the 12th of December. Haskins appeared for the purpose of appealing the suit to the county court, saying to Bennett and others that he only appealed to get time; that he should settle the debt; but he then told R. W. Bennett that he could not hold the oxen, as they were exempt from attachment. Said Bennett afterward caused said oxen to be appraised, in pursuance of the statute, and the officer, D. W. Kimball, duly sold them at public auction, on the 23d of March, 1867, for $155.

"I further find that said Haskins demanded the oxen of Benj. Kimball within three or four weeks after they were attached, said

Benj. Kimball then having them in his possession, and that he refused to give them up, saying he was keeping them for D. W. Kimball, and should not give them up without D. W. Kimball's order. I further find that the suit, upon which the stags were attached the second time, (soon after the oxen were taken), failed, and that the officer, who served the writ in favor of Wheeler and attached the stags, reclaimed the stags, and sold them at public auction on an execution, in favor of Wheeler, on the 29th day of December, 1866, for the sum of $91. I further find that Haskins never paid Benj. Kimball any sum for keeping the oxen. I further find that when Kimball attached the oxen he did not know that the stags had been attached, and supposed that the stags were the best yoke for Haskins' business, though in fact the oxen were the most valuable, and most saleable, and the two yoke were about equal in the value of their services in the lumber business that winter.

"If, from these facts, the plaintiff is entitled by law to recover, I find for him to recover of the defendants the sum of $175, with interest, making the sum of $196, with his costs. Otherwise, I find for the defendants to recover their costs."

Upon the foregoing report the court, PROUT, J., presiding, rendered judgment *pro forma* for the defendants, to which the plaintiff excepted.

*Preston & Brown*, for the plaintiff.

*Geo. W. Harmon*, for the defendants.

The opinion of the court was delivered by

WILSON, J. Upon the facts reported by the referee, two question arise: first, whether the debtor has the right to select from his oxen or steers the yoke of oxen or steers he would keep exempt from attachment; and second, whether the plaintiff's declarations to Bennett, on the 23d of November, as to the attachable property then owned by the plaintiff, should estop him from claiming exemption of the red oxen against Bennett's attachment. In regard to the first question, it appears that the plaintiff, on the 10th of November, owned a yoke of stags and a yoke of oxen, and one yoke of them were exempt from attachment. On said 10th of November, the stags were attached by Wheeler, and the plaintiff procured them receipted, retaining pos-

session of them. On the 6th of December, while the stags and oxen were in the plaintiff's possession, the defendant, Bennett, not knowing that the stags had been attached, and supposing they were the most useful for the plaintiff to keep, sued the plaintiff and attached the oxen in the plaintiff's absence. On the 8th of December, the plaintiff told the officer that the oxen were exempt, that he should claim them, and that the officer could not hold them, but the plaintiff at that time procured the oxen receipted, with the understanding that the receiptor should keep them in his possession. After the oxen were attached and before they were receipted, the stags were attached the second time and taken from the possession of the plaintiff, to Kimball's, where the oxen were being kept by the officer. On the 12th of December, the plaintiff notified the defendant, Bennett, that he claimed the oxen were exempt from attachment, and demanded them of the defendants before the suit was commenced. The statute in terms gives the debtor the right to make the selection, and in him alone that right is vested. Section 13 of chapter 47 of the General Statutes, after enumerating various articles of property as exempt from attachment and execution, adds: " And also one yoke of oxen or steers, as the debtor may select, with sufficient forage for keeping the same through the winter." In 1866, said section 13 was re-enacted in the same terms with an addition as to horses. The act is in the same words as section 13 as to the exemption of oxen and steers, with an addition as to the exemption of two horses kept and used for team work, and such as the debtor may select in lieu of oxen or steers, but not to exceed in value the sum of two hundred dollars. The whole provision of the act of 1866 as to being kept and used for a team, and the limitation as to value, applies exclusively to the two horses, and in no way affects the construction of the former law where the debtor claims exemption of oxen or steers. The chief object of the statute in making the exemption of a yoke of oxen or steers was to enable the debtor to have the use of cattle of this description for a team. Under this provision of the statute, any man who has or can raise sufficient means to pay for two steer calves and forage for their keeping, can raise them up to oxen, exempt

from attachment. It will be seen that the statute, as to this sub-ject of exemption, is very liberal to the debtor. It says "noth-ing about requiring the oxen or steers to be fit for a team, or being actually used for that purpose, in order to be exempt." It contains no express limitation as to the value of the oxen or steers exempt, but the exemption is absolute and unqualified. In *Dow* v. *Smith*, 7 Vt., 465, COLLAMER, J., says: "This exemption is charitable and in the cause of humanity, and ought to receive a liberal and practical construction." In *Mundell* v. *Hammond*, 40 Vt., 641, PECK, J., says: "It is established by the whole cur-rent of decisions in this state on this subject that the statutes exempting certain property from attachment are remedial in their character and ought to receive a liberal construction in favor of the debtor." The debtor may own a yoke of oxen or steers, of little present value for a team, but valuable to keep on account of their yearly growth. He may at the same time own another yoke of oxen of great present value for a team, but they are full grown and continually depreciating in value. Either pair will answer his present purpose or use for a team. His creditors have the right to take from him one pair or the other. The reason of the rule giving him the right to select the pair he would keep is obvious. His superior knowledge of the cattle, and of the pair from which he could derive the greatest present and future ad-vantage and profit in view of the purpose for which he might de-sire to keep such cattle, would enable him to make the selection according to the spirit as well as the letter of the statute giving him that right,—a right which, in view of the apparent object of the statute, should not be exercised by an interested creditor. There is nothing in the report tending to show that the plaintiff objected to the attachment of the stags; he procured them re-ceipted, evidently intending, at that time, to settle the debt and not have the property sold. He made no claim to keep them as exempt; and from this, and the fact that he then owned the red oxen, it would seem that he then intended to claim exemption of them, and not the stags.

It is said by the defendants' counsel that if the debtor is al-lowed to make the selection, a practical difficulty might arise in

case of an attachment in the absence of the debtor, or if he should decline, on reasonable request, to make his selection. We have no such case before us. It does not appear that the debtor left to avoid notice of the attachment, but it does appear that, immediately after his return and notice of the attachment, he claimed the oxen were exempt. No one can suppose it reasonable that the debtor should remain at home all the time in anticipation of attachments and a request to select the oxen or steers he would keep. It is possible, but not probable, that a debtor would purposely absent himself to avoid notice that he must make his selection, or decline to make it on reasonable request. But if the debtor should, by such conduct, undertake to embarrass his creditors in their attachment of his property, and render it necessary or advisable for them to attach all of his oxen and steers, so as to be certain of holding such as were not exempt, and hold the whole until the debtor had come to his senses and selected the pair he claimed to keep, and he should sue for the taking and detention of that pair to the time of making the selection, I think a sensible jury would deal out to him the measure of justice that such conduct would deserve.

It is insisted by the defendants that the plaintiff, by his declarations to Bennett as to his property, is estopped from setting up a claim that the oxen were exempt from attachment. It appears that the plaintiff, on the 23d day of November, was requested to make payment to Bennett of a debt the plaintiff owed him, and the plaintiff on that occasion told Bennett that he had as much as $5000 of property, that he had two yoke of oxen and other property that could be attached, and that he should pay Bennett soon. Upon the facts reported by the referee, we think it is clear that the plaintiff, by his declarations to Bennett as to his attachable property, did not waive his right to claim exemption of the oxen. In order to entitle the defendants to prevail on this point, it should appear that the declarations of the plaintiff in respect to his property were such as would justify the defendants in attaching property exempt from attachment, and that by reason of those declarations the defendants made the attachment. It appears that the plaintiff on that occasion spoke generally of his

means to pay the small debt demanded of him; he enumerated certain property, among which were the two yoke of oxen, and concluded by saying that the property could be attached. But the subject of exemption was not mentioned, and probably not thought of by either party. The defendant was not given to understand that the plaintiff intended to waive his right to keep property which was exempt from attachment, and there is nothing in the case indicating that the defendant, Bennett, understood the plaintiff would turn out to be attached or consent to an attachment of property exempt by law. Bennett was not there on that day to make an attachment, and the declarations were not made with a view to an attachment of the property. The defendant, in making the attachment on the 6th of December, did not act upon any previous suggestions of the plaintiff in respect to his property; he gave to the officer general directions to attach personal property. On the question whether Bennett acted upon the previous declarations of the plaintiff in making the attachment, the referee reports facts that are wholly inconsistent with the theory of this point in the defence. The report says, " Bennett sued and attached the oxen in Haskins' absence, not knowing that the stags had been attached, and supposing the stags were the most useful for Haskins to keep." Now if Bennett in making the attachment was acting upon the declarations of the plaintiff that he had two yoke of oxen that could be attached, why did he leave the stags, upon the supposition they were the most useful for the plaintiff to keep? If the declarations of the plaintiff would estop him from setting up a claim that the oxen were exempt, they would have the same effect as to both pair if Bennett had attached them.

The judgment of the county court is reversed, and judgment for the plaintiff for the sum reported by the referee, with interest since last December term.