J. H. GEORGE v. CALVIN BASSETT.

*Trover. Bill of Sale of Property Exempt no Change of Possession necessary. Evidence.*

A man, owning two horses only one of which was exempt, gave a bill of sale of one, which described it, as " kept for team work and exempt from attachment." There was no change of possession. *Held,*

1. That the horse could not be attached by the owner's creditors.
2. That the owner could make his selection *before* attachment.
3. That no change of possession was necessary.
4. That, having selected which of the two was exempt, evidence tending to show that he selected the other one, *after* attachment was inadmissible.
5. R. L. s. 1556, Exemptions,—construed.

TRIAL by jury, December Term, 1879, Caledonia County, Ross, J., presiding. Trover for a horse ; plea, general issue and special matters in defence. It appeared that one Eastman had owned, and gave a bill of sale of the horse in question to the plaintiff to secure a note for the sum of $75, on the 15th day of February, 1877 ; that the horse remained in said Eastman's possession ; that in the bill of sale he described the horse as being " kept for team work, and exempt from attachment " ; that the defendant caused the horse to be attached on the 25th day of June, 1877, and to be sold on execution issued the 4th day of January, 1878. At the time of the execution of the bill of sale, and until the 3d day of September, 1877, Eastman had another horse, of greater value, which he kept and used for team work. Eastman never claimed to the defendant that the horse in suit was exempt from attachment, nor has he ever made any such claim except as appears in said bill of sale, and of that the defendant had no knowledge until after said attachment was made.

The defendant offered evidence to show that the plaintiff, on or about the 25th day of August, 1877, went to Eastman and asked him what he was going to do about the horse in suit ; that Eastman offered to turn out his other horse to plaintiff at what it was worth, and settle the $75 note, but that he would not let him have

it for any other purpose ; that plaintiff did take it on a writ of attachment founded on some other demand ; that, it being East-man's only horse or team at that time, plaintiff could only take it in satisfaction of his claim on the horse in suit ; which evidence the court held inadmissible, and defendant excepted.

The court ruled as a matter of law that the above state of facts entitled the plaintiff to a judgment, and under the direction of the court the jury returned a verdict for the plaintiff for the sum of the $75.

*W. A.* and *O. B. Boyce*, for the defendant.

The statutes and decisions clearly show that the selection of which horse is to be exempt, is to be made *at the time of the attachment*, or within a reasonable time thereafter, by the debtor. *Sumner* v. *Brown*, 34 Vt. 195 ; *Haskins* v. *Bennett*, 41 Vt. 698 ; 44 Vt. 508.

The horse must, as a matter of law, have been *absolutely exempt from attachment* at the time of executing the bill of sale, in order to give plaintiff title under the bill ; and it is only in cases where the property is exempt *by force of the statute, without selection*, that it has been held to pass title as against a subsequent attaching creditor. *Jewett* v. *Guyer et al.* 38 Vt. 209 ; *Wilkinson* v. *Wait*, 44 Vt. 508; *Plimpton* v. *Sprague*, 47 Vt. 467 ; 11 Vt. 595 ; 2 Allen, Mass. 219 ; 44 N. H. 16 ; 14 Pa. St. 263.

If the words, " The one I keep and use for team work, and the one I claim as exempt from attachment," in the bill of sale, gave plaintiff title to the horse as against attaching creditors, so that he could with impunity leave it in the possession of Eastman, then as a matter of *fact*, at the time of defendant's attachment, Eastman had only one horse, and that the one he had at home, with only *an interest* in the one in suit—or in other words, *East-man owned* the one he had at home, and plaintiff owned the one attached by defendant, and defendant could not have held either one if he had attached both. *Wilkinson* v. *Wait, supra.*

*Belden & Ide*, for the plaintiff.

Eastman exercised this right to select to the extent of his ability by the conditional sale to the plaintiff to secure the seventy-

five dollar note, therein describing the horse as "kept for team work and exempt from attachment."

There was no necessity for a change of possession of the horse. Neither the Vermont rule requiring such change, nor the reason for such rule calls for it. No false credit would be given or enjoyed by such possession. *Foster* v. *McGregor et al.*, 11 Vt. 595 ; Thompson's Homestead and Exemption Laws, s. 738 *et seq.*

Everybody would be presumed to know that one such horse would be exempt from attachment, and we contend that, having enjoyed the benefit of the selection of one horse to be exempt, he thereby exhausted his right in that regard, and could make no such claim to any other horse or horses that might be attached, so that all others belonging to him found in his possession would be attachable.

This case apparently involves the same doctrine that was settled in the case of *Jewett* v. *Guyer et al.*, 38 Vt. 209.

The opinion of the court was delivered by

VEAZEY, J. In the sale of personal property exempt from attachment no change of possession is required in order to make it valid as against subsequent attaching creditors. Being exempt, the retention by the vendor does not enable him to acquire a false credit on the strength of it. *Foster* v. *McGregor*, 11 Vt. 595 ; *Jewett* v. *Guyer*, 38 Vt. 218.

In such a case the purchaser cannot be defeated of his right as between him and the attaching creditor by reason of the debtor neglecting to make a claim which he might and ought to have made in respect to the exemption when the attachment took place. Cases *supra*, and Thompson on Homestead and Exemption, s. 738.

The above rules apply where the property is absolutely exempt under the statute, as in case of an only cow or products of the homestead.

The question here is, do these rules apply in this case ?

Eastman had two horses, only one of which was exempt. About four months before the attachment by this defendant, he, Eastman, gave a lien on one horse to the plaintiff to secure his note

to the plaintiff, and described in the lien that this horse was be-
ing " kept for team work, and exempt from attachment." He
had a right to one horse. In case of an attachment he could say
which he would hold. Must he wait before making his selection
until an attachment is attempted ? We think not, if we are to fol-
low the spirit of the decisions in this State, although the precise
question here has not been passed upon. In the case of *Jewett* v.
*Guyer et al.*, 38 Vt. 209, it was held that where there was a sale
of hay cut on the homestead but retained in the possession of the
vendor, the purchaser would hold it against a subsequent attach-
ing creditor of the vendor. That case arose under the statute of
1849, (Comp. Sts. ch. 65,) which provided that a homestead and
the yearly products thereof should be exempt from attachment
and execution, and that when the personal estate of a housekeeper
should be attached, and he should claim that the same or any part
thereof was the annual product of his homestead, and he and the
creditor did not agree about the same, the officer should cause the
same to be ascertained, &c.. The statute provided no mode for
ascertaining and setting out the annual products of the homestead,
except the debtor at the time of the attachment or taking in ex-
ecution made a claim that such products were the products of his
homestead. No such claim was made in that case, and the debtor
had other hay. The court held that the purchaser from the ex-
ecution debtor had a right to have the question in respect to what
should be considered as coming within the exemption determined
on the same principles which would be applicable to it if it were
a question between the attaching creditor and the debtor ; that he
could not be considered as waiving or losing any right, or as be-
ing estopped from asserting his claim, by reason of the neglect of
the debtor to make a claim which he might have made in respect
to the property, because no laches can be imputed to him ; that
he was not a party to the subsequent proceeding, and it was his
right then to claim that the hay which he purchased of the debtor
was the product of the land which, on proper proceedings,
would have been set out to the debtor as a homestead, and that,
as such, it was exempted from attachment and levy of execution
as the debtor's property ; that the exemption of the annual pro-

George *v.* Bassett.

ducts of the homestead was absolute; and that this quality or character was not affected by the fact that the debtor had received an amount of products for his own use from his other land, out of which the homestead would be taken, equivalent to that which would have grown on such homestead if actually set out, which in fact had not been done.

Among the articles which the statute now provides " shall be exempt from attachment and execution," are " two horses kept and used for team work, and such as the debtor may select in lieu of oxen or steers, but not exceeding in value the sum of two hundred dollars." There is no express provision as to when selection shall be made as between different yokes of oxen or different horses. In *Wilkinson* v. *Wait*, 44 Vt. 508, the court held that where the debtor had sold one of two yoke of oxen, on condition that they should remain his until paid for, and delivered them, but nothing had been paid on them, the other yoke was exempt, although he made no claim to that effect when they were subsequently attached, and notwithstanding his interest as conditional vendor in the oxen sold.

It has always been held in this State that the exemption laws should be liberally construed in behalf of the persons they are designed to benefit. Eastman could have claimed the horse as exempt when attached, or, if absent at the time, after learning of it. *Haskins* v. *Bennett et al.*, 41 Vt. 698. He had then transferred the horse as exempt to the plaintiff, according to the terms of the bill of sale. He had to give it this character in order to enjoy the double advantage of appropriating it for security and retaining it for use. The defendant suffered nothing, as he got such notice of claim from the plaintiff, and so far as appears, within a reasonable time after he learned of the attachment, and long before the horse was sold on execution, as would have been effective to hold the horse if given by Eastman within such time. It seems just that the plaintiff, having succeeded to the title of the horse as an exempt horse as between him and Eastman, should be protected to the same extent Eastman would have been under like notice had he not transferred the title.

We think, upon authority and principle, that it was competent

for Eastman to make his selection as to exemption at the time the plaintiff's evidence tends to show he did make it. The argument that this construction of the statute will afford opportunity for fraud has force ; but the same would be true if the defendant's view was adopted. Beneficial laws are apt to be used for bad purposes by dishonest men ; but that is not often a good reason for limiting the benefit. It is considered a benefit to allow a debtor to use his exempt property for the purposes of credit.

The County Court was correct in rejecting the evidence offered by the defendant to which exception was taken. The claim now is that it was admissible, as it would show that Eastman at that time, 25th August, 1877, six months after the bill of sale was given, and two months after the horse was attached, elected to have the other horse exempt. The question was whether it was selected as the exempt horse the 15th of February, when Eastman, according to the plaintiff's evidence, used the horse for the purpose of security. We are unable to see how the rejected evidence was material on that issue, as the case appears on the bill of exceptions.

With the rejected evidence in, there might have been some ground for claiming the right to go to the jury on the question whether Eastman in fact ever made any selection as between the horses ; but with it out, there appears to have been no dispute in the evidence. All the other statements in the bill of exceptions are statements of what appeared, not what the evidence tended to show. As the exceptions stand there was nothing to controvert the fact that Eastman did make the selection before the attachment, and when, as before shown, he had a right to make it ; therefore the County Court was right in directing a verdict.                    Judgment affirmed.