## JOSEPH B. ALDRICH *vs.* THOMAS GRIMES *et als.*

Under an ancient practice in Rhode Island having the force of law, a sheriff has, incident to his power to sell under a levy, power to adjourn the sale for good cause, duly advertising the adjournment.

This power of adjournment is not limited to the case of " accidents or extraordinary storms " by Rev. Stat. R. I. cap. 195, § 12; Gen. Stat. R. I. cap. 212, § 13; Pub. Stat. R. I. cap. 223, § 13.

Hence when a sheriff's return showed that on June 8, being unable to complete an execution sale, he adjourned it to July 27, on which day, the adjournment having been advertised by him for one week next prior thereto, he sold and conveyed the property levied on:

*Held*, that his action was legal and the sale good.

*Reynolds* v. *Hoxie*, 6 R. I. 463, affirmed.

BILL OF INTERPLEADER.

*July* 7, 1883. DURFEE, C. J. This case may be shortly stated as follows. November 23, 1878, the complainant, being mortgagee of an estate in Woonsocket by virtue of a mortgage given him by Thomas Grimes and John Grimes, sold it under a power of sale contained in the mortgage for $3,000, and, after satisfying the mortgage debt and the expenses of the sale out of the proceeds, had a surplus remaining of $262.15. He paid one half of this surplus to Thomas Grimes. The other half was claimed by

one James Hanley and also by said Thomas Grimes, and the complainant therefore, to determine to which of them it belongs, has filed a bill of interpleader against them. The answers show that on February 15, 1877, the undivided half interest of John Grimes in the mortgaged estate was attached on original writ at the suit of George W. Kidd & Co.; that Kidd & Co. recovered judgment in said suit and took out execution, which was levied on the interest attached on February 25, 1878; that the officer having the execution for service advertised the interest attached for sale, June 8, 1878, and set up the notifications required by law; and that on June 8, 1878, the officer, according to his return, being unable to complete the sale, adjourned it to July 27, 1878, on which day, the adjournment having been advertised by him for the space of one week next prior thereto in the "Woonsocket Daily Patriot," he sold and conveyed the interest attached to one Daniel Smith, who afterwards sold and conveyed it to Hanley. By virtue of said sales and conveyances Hanley claimed the half surplus in controversy. Thomas Grimes also claims the half surplus as grantee of a purchaser at an execution sale of said interest made prior to the sale to Daniel Smith, but under an attachment of later date. The only ground on which he claims to have a better right than Hanley is that the execution sale under which Hanley claims was void because the officer had no power to adjourn the sale from June 8 to July 27, 1878, for the reason assigned. Thomas Grimes in his answer also controverts the officer's return, alleging that the sale was not adjourned on June 8 to July 27, but that the property was put up at auction and sold on June 8, being struck off to one William A. Fitzgerald, without adjournment, and that it was not until long afterwards that the adjournment was advertised in the newspaper. He has, however, submitted no evidence in support of this allegation, and the case has been argued simply on the question whether the officer had power to adjourn the sale, taking the adjournment to have been made as stated in his return.

A statute of the State, which was in force when the sale was adjourned, and which is still in force, Gen. Stat. R. I. cap. 212, § 13; Pub. Stat. R. I. cap. 223, § 13, provides as follows: "In case of accidents or extraordinary storms or tempests, the sheriff

may from time to time adjourn the sale of the estate levied on, giving one week's notice thereof by publication in a newspaper in the manner above provided." The officer's return does not show that the adjournment here in question was made under this section, for it does not show that it was made because of any accident, storm, or tempest. The adjournment was therefore void unless it be valid independently of this section. The section was first incorporated into the statute law of the State in the revision of 1857. The case of *Reynolds* v. *Hoxie*, 6 R. I. 463, decided in 1860, involved the validity of an execution sale made July 28, 1855, after two adjournments by the sheriff. The court upheld the sale, holding that under an ancient practice, having the force of local law, the sheriff had the power to adjourn, for good cause, incident to his power to sell under the levy, duly advertising the adjournment. Under this practice, the court say : " The usual period of adjournment was from a week to three or four weeks, according to the circumstances, but without the consent of parties not in general longer, since the command in the execution exacted of the officer reasonable diligence in making money upon it." See, also, *Jewett* v. *Guyer*, 38 Vt. 209. Under the law as thus stated, the adjournment here, taken according to the return, must be regarded as valid, unless the general power which the officer had before the statute is to be held to have been limited by the statute by implication so as to be no longer exercisable except in case of accidents or extraordinary storms or tempests. It seems to us highly improbable that the General Assembly intended so to limit the power, unless it can be supposed to have used the word " accidents " with unwonted breadth of meaning : for one of the most ordinary reasons for adjournment would be likely to be the want of responsible bidders, which might occur without accident. In *Reynolds* v. *Hoxie* the court expressed the opinion that the statute did not confer, but only recognized, the power, which existed independently of it, and that its whole force is expended by requiring the officer exercising the power of adjournment to give at least one week's notice thereof in manner provided by law for notice of the original sale. It is true this construction was not at all necessary to the decision, and was therefore *obiter dictum.* It was, however, a construction put upon the statute soon after its

enactment by judges who well knew the practice previously prevailing and the evils incident to it, and who would, therefore, be pretty sure to know the purpose and meaning of the statute. Indeed, Chief Justice Ames, who delivered the opinion in *Reynolds* v. *Hoxie*, took a leading part in the revision of 1857. Doubtless, too, the construction given in *Reynolds* v. *Hoxie* has been accepted as correct and may have been acted upon. It is therefore entitled to great consideration wholly aside from its reasonableness. And we see no reason for not following it. We therefore decide, on the case as submitted, that the execution sale of July 27 was valid, and that Hanley is entitled to the money in suit.

*Decree accordingly.*

*Edwin Aldrich*, for complainant.

*John D. Thurston*, for respondent Grimes.

*Charles E. Gorman*, for respondent Hanley.