third) were reasonably sufficient to justify the verdict ordered and the judgment rendered.

*Judgment affirmed.*

---

IN RE B. A. HUNT.

November Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 8, 1912.

*Habeas   Corpus—Execution—Validity—Return— Presumption—*
*—Imprisonment in Adjoining County—Effect.*

Where the record of court did not show, and the clerk did not know, that a payment on a judgment had been made to the judgment creditor, an execution for the full amount of the judgment in.accordance with the record was not even irregular.

The detention by a jailer of a person committed under a certified execution issued for the full amount of a judgment, though a part of it had been paid, but the payment was neither shown by the record of the court issuing the execution nor known to its clerk, is not illegal, where there has been no tender of the amount due on the execution and fees legally chargeable.

Under P. S. 2056, providing that commitments to jail shall be in the county where the arrest is made unless otherwise directed, and that, when there is no legal jail in that county, the commitment shall be in an adjoining county, and P. S. 6266, declaring that forms of writs thereunder "shall, as near as circumstances will permit, be adopted and used and shall be sufficient," an execution against a person, commanding the officer, for want of sufficient goods and chattels of the debtor, to take his body and him commit to the keeper of the jail in the county, "or such other jail as the law directs," sufficiently complies with the statutory form, and justifies the commitment of the debtor to the jail in an adjoining county, when the jail in the county where the arrest was made had been destroyed by fire.

It will be presumed in the absence of evidence to the contrary, that an officer returning an execution returned it seasonably, and so performed his duty.

HABEAS CORPUS, brought to the Supreme Court for Chittenden County at its November Term, 1911, and then heard on the pleadings. The opinion states the case.

*B. A. Hunt* for the relator.

*W. E. Tracy* for the respondent.

WATSON, J. It appears that at the May Term, 1910, of the Supreme Court for the county of Lamoille, judgment was· recovered by W. G. Jones in an action of trover against the relator, for the sum of $424.57, damages, and costs taxed and allowed at $46.14; that at the time of rendering the judgment the court adjudged that the cause of action arose from the wilful and malicious act or neglect of the defendant (relator), and that he ought to be confined in close jail; and a certificate thereof was stated upon the execution issued on said judgment; that such execution was issued March 1, 1911, by the clerk of said court for the full amount of the judgment, it being $470.71, with fifty cents more for the writ of execution, which execution ran against the goods and chattels, and lands of the debtor, and for want thereof, etc., the officer was commanded to take· the body of the debtor, "and him commit to the keeper of the jail in Hyde Park, in the county of Lamoille, or such other jail as the law directs," etc.; that previous to the last named date two hundred dollars was paid by the relator's wife on the judgment, to the execution creditor, but the record did not show this, and the clerk, having no knowledge thereof, issued the execution in accordance with the records of the court; that in the month of April, 1910, the Lamoille county jail was destroyed by fire, since whch time there has been no legal jail in the county;. that on March 6, 1911, the sheriff of that county, for want of goods and chattels of the relator, etc., to satisfy said execution and the legal fees thereon, took the body of the relator at Johnson, and there being no legal jail in the county of Lamoille, committed him to the keeper of the common jail in Burlington, in the county · of Chittenden.

It is contended by the relator that the execution was invalid, as contrary to Form 4, P. S. 6266, both as to the amount and the

place of commitment. The first position is untenable. Since the record did not show, and the clerk of court did not know, that anything had been paid on the judgment, the execution, issued for the full amount of the judgment in accordance with the record of the court, was not irregular, and much more, not void. *Perry* v. *Ward*, 20 Vt. 92. The case of *Fairbanks* v. *Devereaux*, 48 Vt. 550, relied upon by the relator, is not in point. There the original execution being returned satisfied in part, the *alias* execution was issued for the full amount of the judgment, instead of so much thereof as remained unsatisfied. The clerk had official knowledge that the original execution was in part satisfied. The holding was simply that the *alias* execution was irregular, and that *audita querela* was a proper proceeding by which to set it aside.

It is further contended that since the execution was for the full amount of the judgment, the copy left with the jailer, without other instructions, was a detention for that amount, and fees. The trouble with this contention is, that no tender of the amount in fact remaining due on the execution and such fees as were legally chargeable to the relator was ever made by him. And being rightfully imprisoned for part, his detention is not unlawful. *Meserve* v. *Folsom*, 62 Vt. 504, 20 Atl. 926.

Form 4, under P. S. 6266, in terms seems to contemplate that the place of commitment shall be definitely stated. Yet the statute is that the forms under that section, "shall, as near as circumstances will permit, be adopted and used, and shall be sufficient in law." The words, "as near as circumstances will permit," used in that connection, plainly show it permissible to vary the form if need be to meet the circumstances of the particular case.

By an act passed October 25, 1789, with preamble reciting that there was no legal jail in Addison or Chittenden County, it was provided that whenever any warrant should issue, or any judgment be rendered by any of the courts of this State, "against any person or persons, who shall reside in either of the counties in which there shall not be a good and sufficient jail, it shall be the duty of the said courts in issuing said warrant or writ of execution upon any judgment" so rendered, "to command the" officer to whom the warrant or execution might be directed,

"to commit the person or persons specified in such warrant or writ of execution, to any jail, in any of the counties in this State, as shall, in the judgment of said court, be considered the most convenient." Haswell's Revision, 252. These provisions appear in the Revision of 1797, Ch. 3, Sect. 37, without any change material to be noticed in connection with the matters now under consideration, except that the words "good and sufficient jail" are changed to "legal jail."

By section 35 of the same chapter it is provided that when an officer, serving a writ of attachment, shall attach the body of the defendant, which shall not be discharged by procuring bail, etc., the officer "shall have full power and authority, to commit the said defendant, * * * , to the jail of the county in which he shall be taken, or in case there be no legal jail in the county, then to the next county where there is a legal jail," etc. And by section 38, when any officer "shall find it necessary, on the service of any attachment on *mesne process* or warrant for the collection of rates or taxes, to commit any person, or persons, who reside in either of the counties in which there shall not be a legal jail, it shall be the duty of such officer to commit the person, or persons, * * * to some jail, in one of the nearest counties in the State in which there shall be a legal jail, as shall, in the judgment of such officer, be most convenient," etc. The law of sections 35, 37, and 38, R. 1797, remained in force without substantive change until the revision of 1839. Then the law of those sections, as revised and otherwise repealed, appears in R. S. ch. 28, and so far as pertains to the place of commitment it is as follows: Sect. 24, "Whenever any officer or other person, authorized by law to serve any writ, warrant, execution or process, is required by law to commit any person to jail, such commitment shall be made in the county in which the arrest shall be made, unless otherwise directed by law;" Sect. 25, "If there shall not be a legal jail in the county where such arrest shall be made, such commitment shall be made in an adjoining county, where there is a legal jail." Thus the law in substance has hitherto remained, and the same is in P. S. 2056. The former provisions requiring the court issuing a warrant or writ of execution in the circumstances named, to order in what other county the commitment should be made,

were eliminated by the revision of 1839, while the essential elements of the provisions relating to commitments for want of bail, etc., when the arrest was on *mesne* process, giving the officer full power and authority to make the commitment in the county in which the arrest was made, or if there be no legal jail in that county, then in the next county where there is a legal jail, were retained and as revised made applicable to all commitments, whether on warrant, *mesne* or final process.

In *Lewis* v. *Avery*, 8 Vt. 287, 30 Am. Dec. 469, the action was for false imprisonment. The defendants took plaintiff at Windsor, and committed him to the common jail of the county, at Woodstock. One of the defendants justified as an officer under writs of execution against the plaintiff and in favor of the other defendants. One of the executions was objected to for that the town of Windsor was inserted instead of Woodstock, as the place of imprisonment. It was held that the insertion of the word Windsor instead of Woodstock, was obviously a mere clerical error, and did not render the precept absolutely void; that "the officer's duty on execution is all particularly pointed out *by statute*, and he therefore needs not a direction of particulars in the precept. By statute he is directed to commit the debtor to the *common jail* in the county, which he correctly did in this case." There was no common jail at *Windsor*, and that word was treated as surplusage. This case was followed by *Avery* v. *Lewis*, 10 Vt. 332, 33 Am. Dec. 203. And in *Clayton* v. *Scott*, 45 Vt. 386, also an action for false imprisonment, the plaintiff was arrested in Windham county on an execution against him in favor of defendant. Scott, issued by the county court in Bennington county, which execution, regular on its face, commanded the officer to take the body of the plaintiff and him commit to the keeper of the jail in Bennington or Manchester, in the county of Bennington. The plaintiff was imprisoned in the jail in Bennington. The case stood on demurrer to the officer's plea of justification under the execution. The fact that there was a legal jail in the county of Windham, when and where the arrest was made, was not denied by the plea. Holding the plea insufficient, the Court said it was clearly the duty of the officer to commit the plaintiff to the jail in Windham county, unless the command in his precept was paramount

to the requirements of the statute; that the Court did not so regard it; that all that is required of an officer is that he execute his precept according to law, and if he violates the law in its execution, he cannot justify under it.

Therefore, construing the statute in the light of the history of legislation had touching the same subject matters, and of the decisions of this Court on kindred questions, we think that by the intention of the law the statutory form of writ of execution (P. S. 6266, Form 4) is sufficient in respect to the place of commitment, and if there be no legal jail in the county where the arrest is made, the law directs the officer where to make the commitment, namely, in an adjoining county having a legal jail. The county of the arrest cannot always be foretold; and when it can, the want of a legal jail therein may exist at the time of issuing the process, or it may not until later, and due, for instance, to some unforseen subsequent event of destruction. The statute is intended to be broad enough to cover all such contingencies as may arise, and by the construction given it is adequate to that end.

As before seen, the execution in question commanded the officer to commit the relator "to the keeper of the jail in Hyde Park in the county of Lamoille, or such other jail as the law directs." There being no legal jail in the county of Lamoille at that time, the disjunctive clause of this command had the effect to refer the officer to the statute for his directions in such behalf. It was not essential to the validity of the process, nor yet in the circumstances was it inappropriately inserted. Indeed, in *State* v. *Malloy*, 54 Vt. 96, it was held that there was no error in the magistrate's directing the commitment to be made in a specified adjoining county, having a legal jail. Such direction was not, however, held essential.

And finally the relator says it does not appear that the execution was returned to the clerk of court, by the officer, within the time required by law. We do not consider whether a failure so to do, after a legal commitment thereon, would render the imprisonment invalid. See *Watkinson* v. *Bennington*, 12 Vt. 404. The record before us includes a copy of the original execution with the officer's return thereon, certified by the clerk of the court on November 13, 1911, to be a true copy "as the

same now appears on file and record in the office of the clerk of said court." The case thus shows that the officer returned the execution, but not the time when. In the absence of evidence to the contrary, he is presumed to have rightly and duly performed his duty in this respect. *Chandler* v. *Spear*, 22 Vt. 388; *Jewett* v. *Guyer*, 38 Vt. 209; *Fairbanks* v. *Benjamin*, 50 Vt. 99; *Drake* v. *Mooney*, 31 Vt. 617, 76 Am. Dec. 145; *McKinstry* v. *Collins*, 74 Vt. 147, 52 Atl. 438; S. C. 76 Vt. 221, 56 Atl. 985.

*Judgment that the relator is lawfully imp isoned, and he is remanded to his former custody.*