# Vermont Salvage Corp. v. Northern Oil Company, Inc. and Trustee

[109 A2d 267]

May Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed November 3, 1954.

*Witters, Longmoore & Akley* for the plaintiff.

*John A. Swainbank* for the defendant.

**Chase, J.** This is an action in contract for rent with a declaration in common counts with specification. The defendant filed an answer and a declaration in set-off. Trial was had by jury at the December Term, 1953 of the Caledonia

County Court. The verdict was for the defendant. The case is here on the plaintiff's bill of exceptions. The defendant has no exceptions here.

On March 11, 1950 the plaintiff, a junk dealer in St. Johnsbury, Vermont, leased to the defendant, a gasoline and oil distributor from Burlington, Vermont, a filling station ádjacent to its junk yard in St. Jchnsbury for five years commencing April 15, 1950. The rent was $1500.00 a year payable at the rate of $125.00 each month. The defendant paid the rent specified in the lease from April 15, 1950 to January 15, 1952. The defendant sublet the filling station to the Northern Auto Supply Company of St. Johnsbury who in turn sublet it to one John Gracie. Gracie operated the station for about two months commencing May 1, 1950 and quit. Thereafter the Northern Auto Supply Company operated the station until June, 1951 when it discontinued operating it. The defendant never operated the filling station. The Northern Auto Supply Company paid rent to the defendant through the month of August, 1951 when it ceased to pay rent. On March 11, 1950 the plaintiff was using the filling station premises to store some of its junk and equipment which it agreed to move within thirty days. About the effective date of the lease all the junk and equipment had been removed except two large planers and one large gasoline storage tank. These planers and tank did not interfere with the operation of the filling station but they did prevent the defendant and its sub-tenant from erecting a fence around a part of the leased premises. Such a fence would have made the filling station premises more attractive and would have set them apart from the plaintiff's junk yard. The plaintiff through its president, who was deceased at the time of trial, promised several times to remove the two planers and tank. Sometime between January, 1951, and early summer that year the plaintiff removed the planers. The tank was removed in July or August, 1951.

The first exceptiou briefed by the plaintiff is to the permitting the president of the defendant corporation to answer the following question: "Now was there any understanding on March 11, 1950 between your corporation, the Northern

Oil, and the Vermont Salvage, regarding what was to happen to this equipment that was on the premises?" The answer was, "They were to remove all the equipment and junk on the premises within thirty days."

██ The plaintiff objected to this evidence on the ground that it was an attempt to vary the terms of the contract, but its claim now is that the word "understanding" as used in the question was synonomous with "agreement" and that the question called for a conclusion of the witness. This claim, made here for the first time, is not for consideration. Having specified the ground of its objection, the plaintiff is bound thereby even under V. S. 47, §1628 [1]. *Lunnie* v. *Gadapee*, 116 Vt 261, 265, 73 A2d 312, and cases cited. See *State* v. *Teitle*, 117 Vt 190, 200, 90 A2d 562.

██ The next exceptions briefed are to the permitting the defendant to show what it had done in respect to painting and repairing the building on the leased premises. This evidence was admitted as bearing on the question of the damages of the defendant if the defendant showed it was deprived of the use of the building. The plaintiff claims that the jury were permitted to consider this evidence on the question of the damages of the defendant. The charge of the court that the measure of damages of the defendant is "the difference between the fair rental value of the premises as the defendant had them and the fair rental value of the same premises for the same period had they been free from the plaintiff's junk" did not permit such consideration. The defendant claims the error, if any, in admitting this evidence as to repairs and painting by the defendant was harmless as the plaintiff took no exception to the court's charge on the measure of damages. The failure to except to a charge does not deprive a party of an exception to the admission or exclusion of evidence. *Phillips Co.* v. *Gay's Express*, 112 Vt 49, 55, 20 A2d 102, and cases cited; *Commercial Finance Corp.* v. *Gale*, 105 Vt 3, 7, 162 A 899, and cases cited; *McSweeney* v. *Dorn*, 104 Vt 110, 114, 158 A 88, and cases cited. The test is whether in the circumstances of the particular case it sufficiently appears that the error has injuriously affected

340

the rights of the complaining party. *Berkley* v. *Burlington Cadillac Co. Inc.*, 97 Vt 260, 269, 122 A 665. As the case must be reversed and remanded upon other grounds, it is not necessary to pass upon that question.

■ The next exception briefed by the plaintiff is to the permitting of the president of the defendant corporation to answer the following questions: "With the tank and the two planers and other equipment on there, could it have been operated successfully?" This was answered, "No". The next question was, "Why not?" This was answered, "A service station, to be successful, must be clean and neat and readily accessible and this was not." This testimony was admitted as bearing on the question of the damages of the defendant. In his brief the plaintiff claims for the first time that the questions asked permitted the witness to express an opinion on a matter that was not proper for opinion evidence. This ground is not available here. *Lunnie* v. *Gadapee, supra; State* v. *Teitle, supra.*

■ The plaintiff offered to show that the tank and planers could have been moved by the defendant at a cost of fifty dollars. This offer was excluded and the plaintiff allowed an exception. The claim of the plaintiff is that it was the duty of the defendant to use all reasonable means to protect itself from the injurious consequences resulting from the failure of the plaintiff to remove the tank and planers. The plaintiff cites many cases in support of his claim. So far as appears all of the cases cited by the plaintiff were decided on facts that were entirely different from the instant case and are, therefore, not in point. Here we have a situation in which the plaintiff made repeated promises over a period of about a year to remove the tank and the planers and in fact did remove them during the year 1951. After an injury has begun, repeated assurances by one causing such injury that he will remedy the situation justifies the one injured in failing to take steps to minimize his loss, so long, at least, as there is reasonable ground for expecting such assurances will be performed. 15 Am Jur 424; 25 CJS 505. No cases have been called to our attention nor do we find any holding contrary

to this rule. Therefore, in the instant case, if there was any duty cast upon the defendant to minimize his damage, which we are not required to decide, he was relieved of such duty by the repeated promises of the plaintiff to remove the tank and planers. No error is made to appear in excluding the offered evidence.

■ The next exception briefed by the plaintiff is to the refusal of the court to grant its motion for a directed verdict for $1625.00 and interest thereon from the 15th day of January, 1953 on the ground that the defendant waived any breach of covenant by the plaintiff by paying rent long after such breach. There was substantial evidence that the defendant had suffered damage by reason of the failure of the plaintiff to remove the tank and planers as he had repeatedly promised to do. The amount of this damage, if any, was for the jury to determine and the defendant was entitled to a credit against the claim of the plaintiff of such amount. The right of the defendant to damages resulting from the failure of the plaintiff to remove the tank and planers as promised was not waived by paying rent. *Breese* v. *McCann,* 52 Vt 498, 502. There was no error in denying the motion as made. What the result should or would have been had the motion requested that the jury assess the damages rather than for a specific amount we do not decide.

The next exception briefed by the plaintiff is to the charge of the court. The court charged the jury as follows:

> "The defendant Oil Company claims it was constructively evicted. What is meant by that term? We are going to define it for you. Any disturbance of a tenant's possession by a landlord or by someone acting under his authority whereby the premises are rendered unfit for occupancy for the purposes for which they are demised, or the tenant is deprived of the beneficial enjoyment of the premises amounts, on abandonment of the premises by the tenant within a reasonable time, to a constructive eviction. * * * * Where the landlord has deprived tenant of his full rights and enjoyment of the premises if the tenant

wishes to assert his right to abandon the lease for that cause, the tenant must do so within a reasonable time after the breach by the lessor."

To this charge the plaintiff excepted on the ground there was no evidence of abandonment of the premises by the defendant.

The Northern Auto Supply Company, lessee of the defendant, ceased to operate the filling station in June, 1951. The defendant paid rent to the plaintiff from April 15, 1950 to January 15, 1952. The only evidence of abandonment claimed by the defendant, according to its brief, is the testimony of one Thurston, who apparently operated the Northern Auto Supply Company, that he had sent one of its employees to the filling station to remove its property, that he assumed this employee removed everything and thought he had turned over the keys. There was direct evidence that the keys had not been turned over to the plaintiff. There is no evidence that the Northern Auto Supply Company or its employee was acting for the defendant when this property was removed. The president of the defendant corporation testified that after the Northern Auto Supply Company got out entirely he made every effort to find another tenant. The acts of the Northern Auto Supply Company and its employee were not evidence of abandonment on the part of the defendant. On this evidence the jury, acting reasonably, could not have found an abandonment of the premises by the defendant. It was error to submit this question to the jury.

The plaintiff excepted to the failure of the court to instruct the jury with respect to the duty of the defendant to mitigate the damages resulting from the acts of the plaintiff complained of by it. This duty of the defendant has been covered in our discussion of the exclusion of evidence offered by the plaintiff to show the cost of removing the tank and planers. There was no error in not instructing the jury in this respect.

What we have said regarding plaintiff's motion for a directed verdict disposes of its exception to the refusal to

grant its motion for a judgment of $1625.00 with interest notwithstanding the verdict of the jury.

*Judgment reversed and cause remanded.*