# Petition of Cynthia S. Stowell Et Al

(125 A2d 807)

May Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams and Hulburd, JJ. and Barney, Supr. J.**

Opinion Filed October 2, 1956.

*Fayette & Deschenes* for the protestants.

*Thomas M. Reeves* for the petitioners.

**Cleary, J.** This is an appeal from the Report and Findings of the Public Service Commission on the petition of Cynthia S. Stowell and Narcissa S. Gale, requesting authority to operate a ferry. Lake Champlain Transportation, Inc. entered its appearance as a protestant. Hearings were held, a "Report" and "Findings" were made, and a certificate of public good granted. The case is here on the protestant's exceptions.

The protestant's objections to the grant of the certificate are that it would not promote the general good of the people of Vermont and it would be a serious invasion of the franchise right already granted to the protestant.

The commission found the following facts that are matterial to the issues raised. The petitioners seek to operate a ferry from Isle LaMotte, Vermont, across Lake Champlain, a distance of approximately 1¼ miles to Chazy, New York Such a ferry was operated at one time but was discontinued about 1938.

4. There is a religious shrine on Isle LaMotte to which pilgrimages are made each year between June and September; prior to the discontinuance of the ferry in 1938, pilgrimages were organized on the New York side of Lake Champlain and large numbers of people used the ferry for this purpose; the discontinuance of the ferry resulted in a drastic reduction in the number of visitors to the shrine.

There are five ferries and two bridges across Lake Champlain along its approximate 100 mile length. The protestant received a certificate of public good to operate ferries on Lake Champlain in 1948. It owns and operates a ferry between Grand Isle, Vermont and Cumberland Head, New York. Its Vermont terminal is about 23 miles by road and about 15 miles by water from the petitioner's proposed operation. It also owns and operates a ferry between Charlotte, Vermont

and Essex, New York, and another ferry between Burlington, Vermont and Port Kent, New York.

11. The estimated cost for the vessel, tug and cable, and for other expenses, and for providing working capital for the proposed project will amount to about $35,000.

12. The proposed ferry operation would be beneficial to the people in the Island communities in Grand Isle County, although some traffic might be diverted from the Grand Isle-Cumberland Head ferry to the proposed ferry.

14. On the basis of her signed financial statement, petitioner Narcissa S. Gale owns, jointly with her husband, a house and lot in Richmond, Vermont, valued at $13,700, a camp valued at $5,000 and has cash on hand of $650; said house is mortgaged for $8,500; said financial statement was signed by both Mr. and Mrs. Gale, although the former is not a party to these proceedings and did not appear at the hearing; while not a party to these proceedings, he, having signed said financial ststement with his wife, indicates to the commission his willingness to pledge, so far as possible, their jointly owned properties and assets in support of the proposed ferry operations.

15. Based on the financial statement furnished by her, Petitioner Cynthia S. Stowell owns a house and lot in Barre, Vermont, worth $14,000 and a camp at Colchester, Vermont, worth $5,000, has life insurance equity worth $2,500, and has cash and securities on hand of $12,000, or total assets of $22,700; said house is mortgaged for $7,000; Petitioner's assets, therefore, have a total net worth of $15,700; and most of said property is jointly owned by her husband.

16. On the basis of the financial statement furnished by him, Mr. E. N. Goodsell, father of said Petitioners, has, with his wife, net assets of $47,600; the property listed in said statement is mostly in both his and his wife's names; and, on the basis of his testimony, said E. N. Goodsell is willing to loan, lend and furnish to his daughters, the petitioners, financial backing amounting to $45,000 in connection with their proposed ferry operations.

17. Petitioners intend to borrow on their respective properties and to combine their borrowings with the funds promised by their father in order to finance the proposed ferry operations and will rely on such credit and their father's financial help and knowledge in their proposed ferry operations.

18. Said Petitioners, with their own resources and what they can borrow in addition to those furnished by their father, will be able to finance the proposed ferry operations.

19. The Commission takes judicial notice of an Act of the 1955 Session of the Vermont Legislature which reads as follows:

"No. 231—AN ACT GRANTING FERRY RIGHTS IN LAKE CHAMPLAIN.

(H.259)

"It is hereby enacted by the General Assembly of the State of Vermont:

"Section 1. GRANTEES, CONDITIONS. The right and privilege of maintaining and operating a ferry across Lake Champlain, from the highway leading from Isle LaMotte village, in the town of Isle LaMotte, to said lake, and such other places within two miles each way, north and south, from said road, is hereby granted to Cynthia S. Stowell and Narcissa S. Gale, their heirs and assigns, provided however, that said right and privilege shall become effective only after full compliance with the provisions of Chapter 399 of the Vermont Statutes, Revision of 1947.

"Sec. 2. This act shall take effect from its passage."

20. The proposed ferry operations of the petitioners will promote the general good of the State of Vermont and the public, and a certificate of public good is hereby granted for the proposed ferry operations in accordance with the Act of the Legislature pertaining thereto.

The protestant's first exception is to the commission's finding No. 4. In substance the exception is that the finding is without proper supporting testimony. Some of the

testimony was based on records which the witness claimed he could and would furnish. The record does not show these records were furnished. But the testimony was received without objection or exception and no motion was ever made to strike it out, so the exception to the finding is without merit. *Scott* v. *Leonard*, 119 Vt 86, 100, 119 A2d 691; *Loeb* v. *Loeb*, 118 Vt 472, 474, 488, 114 A2d 518. The protestant argues various claims which are beyond the scope of the exception, so these claims are not for consideration here. *Laplante* v. *Eastman*, 118 Vt 220, 225, 105 A2d 265; *Strout* v. *Wooster*, 118 Vt 66, 72, 99 A2d 689; *Parker* v. *Hoefer*, 118 Vt 1, 14, 100 A2d 434, 38 ALR2d 1216. A claim made here for the first time is not for consideration. *Vermont Salvage Corp.* v. *Northern Oil Co.*, 118 Vt 337, 339, 109 A2d 267; *Lunnie* v. *Gadapee*, 116 Vt 261, 265, 73 A2d 312; *State* v. *Searles*, 108 Vt 236, 239, 184 A 701.

Protestant's next exception is to finding No. 11 that the estimated cost for the proposed project will amount to about $35,000, on the grounds that it indicates no account is taken of land cost in New York, and the only figure given by the petitioners is $15,000 for land, that the items of cost total $45,000 with no provision for working capital and that the finding is not supported by the evidence. The protestant claims that the installation of cable costs, transportation costs of equipment to the operating site and the amount required as working capital do not appear but these claims are beyond the scope of the exception and so are not for consideration here. Cases cited supra.

 In stating other claims the protestant considers the evidence in the light most favorable to the protestant. Our consideration of the evidence must be in the light most favorable to the finding and read so as to support it if that can reasonably be done. A finding must stand if the record discloses evidence, which, upon any rational view, supports it. *Bagalio* v. *Hoar*, 118 Vt 384, 388, 110 A2d 719. On review we do not weigh the evidence since its persuasive effect and the credibility of the witnesses are for the triers of fact to determine. *Petition of Citizens Utilities Company*, 117 Vt 285, 287, 91 A2d 687.

The evidence disclosed that the petitioners were considering two types of ferry, one a scow to be operated on a cable and that they would have to pay $8,000 for the scow; the other type would operate on its own power. They had received a figure of $21,000 from one company for this type of craft. They already owned land in Vermont which could be used for ferry purposes. They were looking at land on the New York side. Prices there ranged up to $15,000, but they hoped to find something more reasonably priced. They do not believe, if they can operate a cable ferry, that the landings will be very expensive. $2000 should take care of docks on both sides for a cable ferry. It would cost them $35,000 for operations in round figures. This would be required to acquire the vessel, tug, cable, and other expenses, and to provide working capital for their own company. The $35,000 should cover everything. Applying the above rules we think the evidence reasonably supports the finding and that the exception is of no avail. *Bagalio* v. *Hoar*, 118 Vt 384, 388, 110 A2d 719, and cases there cited.

The protestant excepts "to finding No. 12 as to benefits to be derived from such operation because (a) there is no competent testimony that such benefits will accrue, (b) any benefits will be the result of diverting traffic from the Grand Isle Ferry, and (c) benefits to be derived by increasing flow of traffiic through area is not necessarily in the public good."

All that appears in the protestant's brief in support of this exception are the following ststements: The finding is based upon conjecture. No testimony was introduced or offered showing that such a ferry service is needed. The primary benefits to be derived would come from the diversion of traffic from the Grand Isle operation of the protestant. The testimony of all the witnesses, almost without exception, is to the effect that some traffic, already marginal at Grand Isle, would be diverted to the Isle LaMotte ferry. The commission has made no finding as to the effect of such diversion on the Grand Isle ferry operation, whether or not such adverse effect may outweigh any of the advantages to be obtained by such diversion, and what, if any, protection the certificate of public good already granted to the protestant is entitled.

■ This is inadequate briefing and merits no consideration. The naked statements are unsupported by argument or citation of authorities and no reference is made to the transcript as required by Supreme Court rule 8, par. 5. *Franzoni* v. *Newman*, 118 Vt 421, 423, 110 A2d 716; *Rice* v. *Press*, 117 Vt 442, 450, 94 A2d 397; *Croteau* v. *Allbee*, 117 Vt 332, 335, 91 A2d 803; *Flint* v. *Davis*, 110 Vt 401, 404, 8 A2d 671. Moreover, the claims made are beyond the scope of the exception and are not available or for consideration here. *Scott* v. *Leonard*, 119 Vt 86, 101, 119 A2d 691, and cases there cited; *Laplante* v. *Eastman*, 118 Vt 220, 225, 105 A2d 265, and cases there cited. Also, the exception relates to the commission's finding, not to the statements made that the commission failed to make certain findings. The exception is not sustained.

The protestant treats its exceptions to findings numbered 14, 15, 16, and 18 together. The exceptions are as follows: "To Finding No. 14 and 15 relating to the net worth of petitioners in that the effect of said findings is that the net worth of the petitioners and their husbands is available for use in this enterprise, the fact of the matter being however (a) that said net worth would not be available for said enterprise (b) that the realizable cash from said petitioners which would be available could not exceed a total of $7,500.00 on the most favorable consideration. The computation in arriving at said figures having been set forth in protestant's requests for Findings B-4, B-5. To Finding No. 16 in that the evidence is undisputed, that all of Mr. Goodsell's property is held jointly either with his wife or his sons and for the further reason that there would not be available from his estate $45,000.00 by loan or any other means for the petitioners use. To Finding No. 18 in that finding is not supported by said testimony either as to the availability of funds of the petitioners or funds of their father."

The following is all that is said in the protestant's brief that is material to the points covered by these exceptions. "A realistic appraisal of the financial resources of the individuals involved must be had. This is apparently completely disregarded in Finding No. 18. The testimony offered on financial ability does not establish the financial ability of petitioners to conduct the contemplated operation."

The protestant excepts to finding No. 20 "in that said finding is not supported by evidence." But all the protestant says in its brief is "The Commission's Finding No. 20 for the reasons heretofore recited and for the reasons hereinafter set forth is error and should not be permitted to stand." What we have said supra about inadequate briefing applies to the exceptions to findings numbered 14, 15, 16, 18 and 20. The exceptions are not sustained.

■ The protestant excepted to the commission's failure to find facts requested by the protestant. It listed the numbers of thirty-seven requests and nothing more. The requests are not recited, no reason is stated for compliance with any of them and no grounds are stated for the exceptions. This reserves nothing for review. The exceptions are too general to require any attention whatever. *Platt's Admr.* v. *Shields and Conant*, 96 Vt 257, 266, 267, 119 A 520; *Susena* v. *Recor*, 103 Vt 447, 449, 156 A 416; *Kennedy* v. *Robinson*, 104 Vt 374, 379, 160 A 170; *Utley* v. *School District of Woodbury*, 110 Vt 522, 529, 530, 9 A2d 117. *McPherson* v. *Dow*, 117 Vt 506, 508, 96 A2d 649.

■ These petitioners were granted this ferry right and privilege by special act of the Legislature. The Public Service Commission has made this right and privilege effective by granting a certificate of public good. We should be reluctant to interfere with this action of the legislature and Public Service Commission. *Petition of Central Vermont Public Service Corp.*, 116 Vt 206, 217, 71 A2d 576. Findings must stand if supported by any substantial evidence, although there may be inconsistencies, or even substantial evidence to the contrary. *Petition of Citizens Utilities Company*, 117 Vt 285, 287, 91 A2d 687. We are satisfied that the Commission's findings are supported by substantial evidence and that the conclusion reached in finding No. 20 is supported by previous findings.

*The grant of the certificate of public good is affirmed. To be certified to the Public Service Commission.*