# John D. Latchis Et Als v. State Highway Board

[134 A2d 191]

May Term, 1957.

Opinion Filed July 8, 1957.

*Fitts & Olson* for the appellants.

*John S. Burgess* and *John D. Paterson* for the appellee.

**Hulburd, J.** The State Highway Board is seeking, under V. S. 47, §4971 *et seq.*, the condemnation of the appellant's land. The matter comes before this Court upon the appellant-landowner's exceptions to the county court's order accepting the report of the commissioners as amended. The appellant asserts that the order for the taking of his lands is unsupported by the evidence, both as to the necessity for the taking and as to compensation awarded therefor. The report shows that the proposed taking is for the purpose of a limited-access, divided, four-lane highway or throughway (with connected interchanges, etc.) which will ultimately run from Hartford, Connecticut to White River Junction, Vermont, from which point it will proceed in two forks, to the Canadian border,

one by way of Burlington, and the other by way of north-eastern Vermont.

A survey of the proposed highway shows it reaching the land of the appellant at Brattleboro, Vermont. The proposed taking consists of approximately 24.62 acres, cutting diagonally across the northeast portion of the appellant's premises which consist, in all, of approximately 135 acres of land in Brattleboro lying westerly of the present U. S. Route 5 (called Canal Street at that point) and southerly of Fairview Avenue. Of this total acreage only about 8 acres is flat land, so-called; the remainder is hilly and wooded terrain which has been partially cleared for skiing purposes, although not used in that connection for the past two or three years. No portion of the appellant's flat land is included in the proposed taking.

We turn first to the matter of necessity; for the statute provides that condemnation of land for highway purposes may be had only when "the interest of the State shall so require and there is a "necessity " for taking "for such purposes." (V. S. 47, §4971-5). Before dealing with any specific exception of the appellant's relating to this subject, it is essential that we have a proper understanding of the terms employed by the statute. The appellant has seized upon the words "imperative necessity" found in the case of *Lorenz* v. *Campbell*, 110 Vt 200, 202, 3 A2d 548, which quotes them from *Farnsworth* v. *Goodhue*, 48 Vt 209, 211, wherein the expression first appears. *Farnsworth* v. *Goodhue, supra,* was not a condemnation case involving a highway but was an action of trespass against a defendant who was constructing an aqueduct and in doing so went onto the plaintiff's land, not for the purpose of laying the aqueduct, but to escape the miry condition of the road adjacent to the construction. This Court properly held that the aqueduct company, although enjoying by statute rights of eminent domain, could not justify its entry on the land of the plaintiff on this ground, especially as it had not proceeded to go through condemnation proceedings and duly ascertained the damage before using the plaintiff's land. The court in its opinion said, in the nature of a dictum, at page 211: "No doubt there might have been

land that the aqueduct would not itself actually touch, and still have been so situated that it would have been necessary to enter upon it, and if so probably the statute would cover such a case of actual necessity. But such statutes are strongly derogatory to common right, and no case can be brought within them except such as come duly within their terms with *imperative necessity.*"

■ It is against this background that we must view the words "imperative necessity". When this is done, the expression, although appropriate enough to the case in which it was used, is seen as one not to be adopted as a general test, nor has it ever been applied in condemnations for highways. To do so would be to adopt a strict and rigid necessity never intended by the statute. As Mr. Justice Holmes reminds us, "A word is not a crystal, transparent and unchanged: it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne* v. *Eisner*, 245 US 418, 425, 38 S Ct 158, 159, 62 L Ed 372. The necessity specified by the statute for the condemnation of land for highways does not mean an imperative or indispensable or absolute necessity but only that the taking provided for be reasonably necessary for the accomplishment of the end in view under the particular circumstances. Cases to this effect include: *Wilton* v. *St. Johns County*, 98 Fla 26, 123 So 527, 65 ALR 488; *Solether* v. *Ohio Turnpike Comm.*, 99 Ohio App 228, 133 NE2d 148, 151; *Town* of *West Hartford* v. *Talcott*, 138 Conn 82, 91, 82 A2d 351; *Kompash* v. *Powers*, 75 Mont 493, 244 P 298, 303; *State ex rel. Department of Highways* v. *Pinson*, 66 Nev 227, 207 P2d 1105.

Now the end in view has been determined by the legislature itself by No. 270 of the Acts of 1955. Its very first section reads: "The General Assembly of the State of Vermont hereby finds, determines and declares that this act is necessary for the immediate preservation of the public peace, health, and safety and for the promotion of the general welfare." This is a declaration of policy under the very act which was enacted that highways like the one in question might be constructed. By its section 6 the state highway board is author-

ized to acquire land by condemnation for the purposes of the act under existing statutes or any that may be hereafter enacted. We are not confronted, therefore, with the situation which existed in *Lorenz* v. *Campbell*, 110 Vt 200, 3 A2d 548, *supra*, where the legislature's purpose was held not to be clear enough to support the taking for the project in question.

■ ■ Although a declaration by the legislature that a use is public might not make it so (see *Tyler* v. *Beecher*, 44 Vt 648, 651) primarily, the right to declare what shall be deemed a public use is vested in the legislature and if the use is one that the legislature might reasonably have considered to be public, the determination by the legislature will be upheld in the courts. Public highways were the earliest objects of the exercise of eminent domain, and it has never been doubted that land taken for a public highway, necessary and convenient to the public, is taken for a public use. 18 Am Jur, p. 684; *Williams* v. *School District*, 33 Vt 271, 276. In the present case the end in view is clear and the authority has been delegated to the State Highway Board to take such land as may be necessary to reach that end. In granting this power, however, the legislature has set up certain requirements to be met and a procedure for appeal from the decision of the State Highway Board. As this matter comes to us, the over-all necessity has been recognized and established by legislative enactment and there remains only the question of whether the taking of the particular land in question is reasonably necessary for the accomplishment of the ends envisioned by the legislature.

■ The argument that "the state doesn't need to take my land" merely because some one else's land might be taken has no validity. After all, if there is to be a road, it of necessity has to go somewhere, some one's property has to be taken. If imperative or absolutely necessity were the test, there would be no practical way in which the crooked road could be made straight. It could always be said "The state already has a road." To justify a taking, the interests of the State must require it, and it must be so shown, but only to the extent that it is reasonably necessary to accom-

plish the end in view after weighing all the circumstances which bear on any given situation. In determining whether a reasonable necessity exists with respect to highways, public safety has become the critical element. Where the volume and nature of traffic is such that public safety requires under the circumstances that the road be constructed, or reconstructed, at a given location, a reasonable necessity exists, and a taking of land is justified, if reasonable in the light of all the concurring circumstances. Under our statute a broad discretion has been vested in the state highway board in determining what land it deems necessary for the particular location and route to be followed, and, as a safeguard, the appeal to county court with a provision for a hearing before an independent board of commissioners is provided. A determination made agreeably to the statute will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious. See 29 CJS p. 886; *Williams* v. *School District*, 33 Vt 271, 279. The function of this Court on appeal is not to weigh the evidence nor to review its sufficiency further than to determine whether the findings below are supported by any competent or substantial evidence. *Petition of Citizens Utilities Co.*, 117 Vt 285, 287, 91 A2d 687; 30 CJS, Eminent Domain, §364.

We now turn to the appellant's specific exceptions, dealing first with those which relate to necessity. Appellant moved to strike the findings of the commissioners numbered 10 through 15, in their report. These findings related to the conditions existing with respect to a two-mile section of the present U. S. Route 5—and its need for replacement—as it approaches the appellant's premises from the south. They bring out its inadequacy for traffic capacity, stopping-sight distances, roadbed width, and passing-sight distances. Due to all these factors and its overly-steep grades this particular section is found to be third from the lowest in rating of the 179 highway sections in the State of Vermont under the generally accepted minimum highway standards which pertain to structural condition, safety and service. The appellant conceded on oral argument that these findings are well supported by the evidence and that a good case was made

out for taking land for the proposed new highway for the two miles just southerly of the appellant's premises, but this they argue has "no materiality with respect to showing of necessity for the proposed taking of land of the appellant" and so, they say, the motion to strike should have been granted. There was no error in refusing to strike the findings in question. They showed how and why the proposed highway leads up to the appellant's premises. Having of necessity arrived at that point, in order to fulfill its function as a throughway, the road had to proceed northward over some route, and as we shall see later, the commission found the "proposed route through appellant's land is the most satisfactory from the standpoint of safety, grade, acquisition and engineering costs, engineering and other sound bases."

■ The appellant excepted to finding No. 17 in which the commissioners found that the proposed interstate highway is necessary for national defense purposes. There was testimony that the proposed interstate highway was related to national defense. We think that the finding of the commissioners was a proper inference from the evidence before them. Even if it were not, the legislative pronouncement as to the necessity of the proposed highway made the finding unessential and so not ground for reversal. *Shaw* v. *Shaw*, 99 Vt 356, 358, 133 A 248.

The appellant excepted to commissioners' finding No. 22 which reads as follows:

■ ■ "Appellee's engineers have properly discarded as impracticable from safety, engineering, cost of acquisition and other standpoints after due consideration thereof the two alternative throughway routes alluded to by Appellant's counsel in cross-examination of Appellee's witnesses over the top of Appellant's ridge southerly of the proposed taking and easterly of the proposed taking and thence along the Connecticut River and around the Town of Brattleboro." The ground of the appellant's exception is, that "the above finding contains a characterization: 'properly' which it is not within the power of the commissioners to determine, nor have they shown themselves competent to so determine." The

ground briefed, however, is not that of the exception as taken, but goes only to the competency of the appellee's engineer. A claim not made below, but made here for the first time is not for consideration. *Vermont Salvage Corp.* v. *Northern Oil Co.*, 118 Vt 337, 339, 109 A2d 267. Moreover, where a witness testifies, without objection being made as to his competency, this matter cannot be raised later on appeal. *Hathaway* v. *National Life Ins. Co.*, 48 Vt 335, 350; *Parker* v. *McKannon Bros. & Co.*, 76 Vt 96, 103, 56 A 536.

Finding No. 23, to which the appellant excepted, reads as follows:

"The Appellee's engineers have considered various routes for the proposed interstate limited access throughway and have properly found that the present proposed route through Appellant's land is the most satisfactory from the standpoint of safety, grade, acquisition and engineering costs, engineering and other sound bases".

To this finding the appellant excepted on the same ground as to finding No. 22 and "on the further ground of employment of unidentified criteria by reference to 'other sound bases'." What we have said in connection with the preceding exception disposes of the first grounds of this exception. As to the added ground, no error appears in the use of the words "and other sound bases" where the major and sufficient reasons have first been stated. Doubtless the "other sound bases" appear in the following finding (No. 24) which we quote shortly. In any event, since the added reasons are stated to be "other *sound* bases", we will so presume on appeal in the absence of a showing to the contrary. *Martin* v. *Town of Wells*, 43 Vt 428, 433. Even if we should assume that the added words were improper, which we do not, they are not of such import as should be allowed to avoid the proceedings. Compare *Eddy* v. *Sprague*, 10 Vt 216, 219.

The foregoing finding is followed by finding No. 24 which reads as follows:

"The proposed interstate throughway leading through Appellant's property is highly necessary and convenient to the public and to individuals in that among other things it gives an interchange to Brattleboro at the southerly end of

town and in that owing to topographical features, the location of the H. Margolin Company plant and the Austine School and the residental area of Brattleboro it is the most feasible route through a small valley with a minimum destruction of property."

This finding is excepted to because "it contains indefinite characterizations, 'highly' and 'feasible' which are not equivalent to the required clear, concise finding as to necessity." The case of *State* v. *Pinson*, 66 Nev 227, 207 P2d 1105, is much in point. We quote from the opinion in that case at page 230: "Appellants contend that the condemnation of the route through their property grows out of 'convenience', 'feasibility', 'economy of construction and maintenance' and not out of 'necessity'. It is true that we find these and other similar expressions constantly in the mouths of the state and federal engineers who testified, and it is likewise true that none of these witnesses used the terms 'necessary' or 'necessity' in their testimony. We do find, however, ample testimony that the alternative route suggested by the appellant (the only alternate brought into the case) failed of approval by the state and federal authorities on account of its lack of 'highway safety'. The condemned route 'offers greater safety to the traveling public'. The proposed alternate route had 'excessive grades' **** 'sharper curvatures' **** permitted 'poorer vision' **** and would have been 'extra hazardous' ****, except at greatly restricted speeds ****. The foregoing examples of the testimony of the state's expert witnesses are sufficient to indicate that the trial court was justified in its finding that the taking was necessary."

In the case at hand, the commissioners have specifically found not only many of the matters mentioned in the quotation but have also found that the proposed taking is "highly necessary." Certainly the appellant cannot complain on account of the use of the word "highly" in connection with the word "necessary". The greater includes the less. The appellant's exception to this finding is without merit.

 In connection with the testimony of Herbert Farrington, highway engineer and witness for the state, the appel-

lant moved that the question of necessity be stricken from the case. If we assume the appellant's claim, namely, that Farrington's testimony was to the effect that there was no necessity with respect to that portion of the highway which would run through the appellant's land, there still would be no error in denying the appellant's motion to strike the question of necessity from the case. There was ample evidence from other sources, notably, engineer Marsett, tending to show the required necessity. A party is not concluded by the testimony of his own witness, where there is other testimony in the case which supplies the required evidence. *Patton* v. *Ballam & Knights*, 115 Vt 308, 312, 58 A2d 817. We might add, however, that a full consideration of Farrington's testimony does not restrict its effect as to necessity entirely to portions of the proposed highway other than on the appellant's property as claimed by the appellant.

What we have said is sufficient to indicate that the commissioners' conclusion No. 2 that "the necessity and convenience of individuals and the State of Vermont requires the proposed taking of appellant's land and rights therein," was supported by legal and proper findings in conformity with the statute and the appellant's exceptions thereto are without merit.

We now give our attention to those exceptions briefed by the appellant bearing on the compensation allowed him for the land to be taken in this proceeding. In addition to the appellant, himself, three witnesses testified on this subject. Much of the testimony is based on a taking of 27 acres. In the course of the proceedings the acreage to be taken was reduced by the state, it being considered that the state could forego its requirement to that extent and thereby preserve intact a ski-jump for young skiers. There was a wide variation in the opinion of the various witnesses as to the value of the land in question and the loss which would result from the proposed taking. Witness Tennien testified that the land to be taken was worth $400. an acre, and that by reason of the taking, 14 acres west of the land to be taken and 7 acres north of the land to be taken would be reduced in value by reason of loss of accessibility and traffic noise so

that its potential value for residential purposes would be destroyed. This loss would amount to $6,985 on the 14-acre and 7-acre pieces. As a result, on a 27-acre basis, Tennien put appellant's total loss at $17,695.

Witness Ratti's figures were slightly higher and amounted to $22,390. figured on a 27-acre basis at $500 per acre. The appellant himself was higher yet with a total figure on a 27-acre basis of $34,000.

As opposed to all this, the State introduced its witness, Bittner. His testimony was to the effect that the value of the land proposed to be taken was $3,600. He further testified that although some of the appellant's remaining land would be reduced in value, the proposed taking would be beneficial in the overall effect. With this evidence before them, the commissioners fixed the compensation to which the appellant would be entitled as follows: $7,500. for the proposed taking of 24.62 acres; $2,000. by reason of disturbance of access to the remaining land; $500. for diminution in value of the appellant's remaining land, the commissioners finding that the land westerly of the proposed taking would be depreciated by that amount by the proposed taking. The total award, therefore, for all compensation amounted to $10,000.

The appellant's first exception is to finding No. 38 which fixes the allowance at $500. for depreciation as just stated. The ground of the exception is that the finding is unsupported by the evidence. This is to ignore the testimony of Bittner who stated the overall effect resulted in no loss to the appellant but rather was beneficial. It is apparent that the commissioners opposed this testimony with that of the other witnesses, weighing all the reasons advanced by each, accepting some, rejecting others, and arriving at an allowance of $500. based on all the evidence. The appellant's theory seems to be that they are entitled to all or nothing on this score. It was for the commissioners to say on all the evidence, aided as it was by a view of the premises, what the appellant was fairly entitled to receive in this regard. It was a matter which called for the commissioners' good sense and sound judgment, and it has not been made to appear that

they failed to reach a just and fair result. Compare *G. & H. Holding Co.* v. *Dutton*, 118 Vt 406, 412, 110 A2d 724.

The appellant excepted to a finding of the commissioners (No. 9) which in substance stated that a portion of the appellant's land was suitable for real estate development purposes, but that none had been offered for sale nor had it been developed in any way. It is obvious that the extent of the development, if any, was a proper factor to be considered in arriving at what would be the appellant's loss and damages. It was not immaterial on the question of damages as claimed by the appellant.

The appellant moved that the testimony of State's witness, Bittner, be stricken for that the witness himself stated that if he owned the land sought to be taken, upon which he had placed a value of $3,600., he would hesitate to sell the land for such sum. As was said in *LeBlanc* v. *Deslandes*, 117 Vt 248, 252, 90 A2d 802, "It is sufficient to say here, that the motion could not have been granted if any part of the testimony was admissible." Bittner's testimony included much more than a damage figure. The motion, if well founded, was too broad.

During the course of witness Tennien's testimony, he referred to the *Appraiser's Journal*. When witness Bittner took the stand, he did not agree with Tennien's testimony as to the effect of a throughway on the sale of adjacent property. Bittner in turn referred to a specific article in the *Appraiser's Journal* which he claimed tended to support his opinion and not Tennien's. The appellant moved that the testimony of Bittner be stricken "for the reason that his testimony was tainted by the introduction of inadmissible *Appraiser's Journal* to which exception was taken." This motion was denied and exception allowed. The transcript discloses that Tennien said he arrived at his opinion from the study of the *Journal*. Bittner's testimony pertaining thereto was offered for rebuttal purposes only. It had a tendency to prove that the authority for Tennien's testimony was not to the effect that he claimed. It was proper for this purpose. Moreover, as in the preceding exception, the

appellant's motion was too broad and its denial was proper for that reason alone.

The appellant excepted to the commissioners' finding No. 30 as unsupported by the evidence. The finding was that the proposed taking is in close proximity to industrial and commercial enterprises and that by reason of that fact is worth less than the $400 or $500 per acre testified to by the appellant's witness. Since it appears that the H. Margolin & Co. plant is located in the immediate area, the transcript supports the finding, with its resultant effect on the value of lots for residential purposes.

In the hearing in county court on the commissioners' report, appellant's exceptions to findings 35, 36 and 37 were sustained. These findings gave some of the reasons why in finding No. 38 the figure of $500. was fixed upon to cover depreciation on the land remaining to the appellant. The appellant's exception is actually directed at finding No. 38 which, as we have already stated, was on the ground that it is not supported by the evidence. As briefed, however, the appellant makes the claim at this point that finding No. 38 cannot stand without findings 35, 36 and 37, which were struck on the appellant's motion in county court. The scope of the appellant's exception does not reach the ground he is now seeking to advance. The exception is not sustained. *LaPlante* v. *Eastman*, 118 Vt 220, 225, 105 A2d 265.

Appellant's exception to conclusion 4 is made to hinge on our disposition of his exception to finding No. 38. No further consideration, therefore, need be given to his exception to conclusion 4.

The appellant excepted to finding No. 34 which allowed him the sum of $2,000 by reason of the disturbance of his access to the remainder of his land. The commissioners found that new access roads substantially equivalent to the existing roads could be built for that amount. The exception is that the finding is "wholly unsupported by and inconsistent with all the evidence." The evidence before the commissioners from appellant's witness was that roads which would be slightly better than the existing roads could be constructed for

$5,467.50. A witness for the State testified that the slightly-better-road could be constructed for $2,844.40. The appellant did not put before the commissioners any figure as to what substantially equivalent roads would cost to construct, and this, of course, is all that the appellant was entitled to. The commissioners were forced to adopt the figures before them by the exercise of judgment aided by a view of the premises. We cannot say that the amount arrived at was not just and reasonable in the light of the evidence. The exception to the finding is not sustained.

 Finding 31 merely states that the fair market value of the 24.62 acres proposed to be taken is $7,500. This finding was excepted to as being entirely unsupported by the evidence and "that it is a conjecture or estimate by the commissioners outside of and beyond their authority and competency and without any legal basis to support the same." What we have said earlier is sufficient to make clear that the finding of a figure of $7,500 was entirely consistent with the evidence. It was within a range placed before the commissioners by the various opinions of the witnesses, from which it was the commissioners' duty to arrive at a determination in the light of all the evidence in the case, aided by a view of the premises. Commissioners have been held to have a great degree of freedom in handling opinion evidence bearing on the value of real estate. *Shoemaker* v. *U. S.*, 147 US 282, 306, 13 S Ct 361, 37 L Ed 170.

Finding 32 was to the effect that adequate access would be available to the appellant's land lying westerly of the proposed taking by reaching it by a way as therein stated. This finding was excepted to as unsupported by the evidence. As briefed, the whole argument of the appellant is based on the fact that at the hearing in county court on the commissioners' report, counsel for the State stated that it would have "no objection to the court striking the word 'adequate' from the finding so it would just say 'access will be had.'" Whether the word "adequate" was struck by the court is not clear. In any event, "access", standing by itself must be understood as meaning "reasonable access". As such, in the circum-

stances, it is indistinguishable from "adequate access". To say that there is error here would be to predicate it on a quibble of words.

The appellant moved to recommit the report for the purpose of putting in newly discovered evidence relative to the qualifications of his expert witnesses. He excepted to the county court's refusal to recommit for this purpose. Such a motion was addressed to the discretion of the county court and its action is not reviewable in the absence of abuse of discretion. *May* v. *State*, 77 Vt 330, 333, 60 A 1. No abuse of discretion has been made to appear. The exception is not sustained.

What we have said disposes of all of the appellant's exceptions in need of separate attention. The findings of the commissioners were proper and sufficient and the order of the county court based thereon accepting the same is without error and judgment is *affirmed*. *Cause remanded*.