## State Highway Board
### v.
### Arthur J. Coburn, et al

[219 A.2d 582]

February Term, 1966

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed April 5, 1966

Motion for Reargument Denied May 10, 1966

*Louis P. Peck,* Deputy Attorney General, for the State.

*Bloomer & Bloomer* for the objecting landowners.

**Shangraw, J.** The State Highway Board seeks to condemn certain land and rights located in the towns of Clarendon and Rutland, in the County of Rutland for highway purposes with limited-access facilities. The particular purpose for which the lands and rights are sought is the improvement of a section of U. S. Route No. 7 in the above towns and will include a limited-access bypass of the Village of North Clarendon. The bypass is .84 of a mile in length.

The project begins at a point located approximately where the proposed project crosses the present U. S. Route No. 7 at the southerly end of North Clarendon Village. From this point, it travels in a generally northerly direction easterly of the Village of North Clarendon and, bypassing said village and after crossing Cold River, bears slightly westerly, and then joining the present U. S. Route No. 7 continues almost due north to the Rutland city line. This project is not a part of the national system of interstate highways.

This petition was brought by the State Highway Board returnable to the Rutland County Court under the authority of Title 19 V.S.A. Chapter 5, Condemnation, particularly sections 224-227, as well as 19 V.S.A. Chapter 17, entitled Limited Access Facilities. Chapter 17, supra, when initially enacted in 1955 applied only to the national system of interstate highways, 19 V.S.A. §1863. By 19 V.SA. §1861 the legislature, in a declaration of policy stated:

The general assembly of the state of Vermont hereby finds, determines, and declares that sections 1861-1872 of this title are necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare."

By No. 167 of the Public Acts of 1961, the need for limited-access facilities in state highways was recognized by the legislature and by section 1, thereof, now 19 V.S.A. §1878, declared:

"The general assembly of the state of Vermont hereby declares that it is the policy of the state generally to encourage and to protect established and existing business in municipal and other heavily populated areas against the disadvantages and insecurity brought about by the relocation of main highways and in carrying out that policy hereby finds and determines that sections 1878-1882 of this title are necessary for the continued welfare of that business."

19 V.S.A. §1864 authorized the establishment of limited-access facilities in the interstate highway system, which statute in part reads: ". . . whenever said highway board with the approval of the governor is of the opinion that traffic conditions, present or future, will justify such special facilities. . . ."

By section 2 of No. 167 of the Public Acts of 1961, now 19 V.S.A. §1879, and related sections, including §1864, supra, the state highway board with the approval of the governor was authorized to ". . . designate and establish any relocation of any section of state highway which bypasses or provides a belt line around a city, village or other concentrated population area as a limited-access facility and may

obtain rights of way and construct limited-access facilities within the limits of the designated section."

Section 4 of the Act of 1961, now 19 V.S.A. §1881, adopted the related provisions of Chapter 17. In effect, 19 V.S.A. Chapter 17 now confers authority to establish limited-access facilities in our state highway system in addition to those pertaining to national inter-state highways.

Following a hearing the county court by its order approved the construction of the limited-access facility as a bypass around the Village of North Clarendon, to which petitionees, William S. Hunter and Margaret M. Hunter have appealed. The issue presented on appeal is whether it is lawful and necessary to have the North Clarendon bypass a limited-access facility. More precisely, and to this end, are certain of the findings supported by the evidence, and is the judgment order supported by the findings?

We now consider the findings which have been challenged by the appellants. In our consideration of the evidence we must take it in the light most favorable to the findings and read it so as to support the findings if that can be reasonably done. A finding must stand if the record discloses evidence, which upon any rational view supports it. *Davis* v. *Kneeland Lumber Co.*, 124 Vt. 70, 72, 196 A.2d 572. The persuasive effect and the credibility of the witnesses are for the trier of fact to determine. *Davis* v. *Kneeland Lumber Co.*, supra, pages 72-73. *Petition of Stowell*, 119 Vt. 298, 302, 125 A.2d 807. A finding must stand if supported by any substantial evidence, although there may be substantial evidence to the contrary. *Metcalf* v. *Crossroads, Inc.* 121 Vt. 147, 150, 151 A.2d 307.

Finding No 25 states: "Whether this project is constructed as limited access or unlimited access would require no different condemnation of lands than is proposed." Appellants urge that this finding is erroneous and a conclusion of law. In support of this contention appellants' brief is limited to the statement: "It is one thing to show the necessity of a re-location of a main highway and quite another to show that it is necessary under 19 V.S.A. 1878 to take the easement of access."

We consider Finding No. 25 as unessential and immaterial to the issue presented in the case, and therefore not grounds for reversal. *Latchis* v. *State Highway Board*, 120 Vt. 120, 126, 134 A.2d 191. Furthermore, it does not deal with necessities, which is the ground on which challenge is asserted.

Appellants except to finding No. 26, especially to that part which states, ". . . that a limited access facility, as set forth in the petition for this Project, is for the public convenience and necessity and it should be so constructed."

In consideration of the foregoing finding, appellants' brief suggests that the sole consideration in determining whether it is necessary to construct a bypass as a limited-access facility around North Clarendon is whether or not it affords protection to established local businesses as set forth in the 19 V.S.A. §1878 policy statement. Appellants urge that protection to established and existing businesses was not considered or found, and in the absence thereof, the easement of access cannot be taken and the highway cannot be a limited-access facility.

Contrary to the contention of the appellants, evidence was introduced in support of the petitioner's claim that the bypass would protect existing businesses in North Clarendon. In redirect examination of Arthur Goss, an engineer for the Vermont Highway Planning Division the following exchange occurred:

"Q. Was it you that testified yesterday as to the approximate number of businesses in the Town?

A. Yes.

Q. And that was approximately fifteen you testified?

A. Yes.

Q. And five of them were on land extending back to the proposed project?

A. I think that's right.

Q. So that the majority of the businesses would not be protected from similar businesses springing up on the bypass that were not limited access?

A. That's right sir."

The clear import of the above testimony is that, if the bypass is not limited-access, only five of the fifteen existing businesses in North Clarendon are situated on land which borders the proposed bypass. If the bypass is not limited-access these five businesses would obviously reap an advantage, whether unfair or not, which the remaining ten would not have. By making the bypass limited-access, at least the majority of businesses are protected against new establishments springing up along the bypass. This is one of the considerations contemplated by the 1961 enactment, supra, in its legislative policy declaration con-

tained in §1878, supra. Other evidence was received that a limited-access facility would protect existing businesses in North Clarendon.

■ It appears from the evidence that limited-access facilities protect accident points in a highway, and provide for greater safety and efficiency of a highway. As stated in *Latchis* v. *State Highway Board,* supra, at page 125, "In determining whether a reasonable necessity exists with respect to highways, public safety has become the critical element." Here, the record demonstrates that the limited-access facility in question affords protection to existing businesses, as well as to provide greater safety and highway efficiency. Finding No. 26, that this project is for the public convenience and necessity, is well supported by the evidence.

During the trial the appellants urged that Route 7 through the village of North Clarendon should be improved, rather than have the village bypassed. The over-all necessity of the improvement of Route 7, or the establishment of a limited-access facility is recognized. The only question is which project should be adopted.

Appellants contend that finding No. 31 is not supported by the evidence. The effect of this finding is that if the project were designed to follow existing Route 7 through North Clarendon Village, it would take so many houses, businesses and locations that the very purpose for keeping the road would be lost, as there would not be much of any village or business left there. While this finding is somewhat dramatically stated, there is however evidence that ten to twelve buildings would be taken, occasioned by the widening of the highway, if this alternative plan urged by the appellants was adopted.

■ Broad discretion is vested in the state highway board in its selection of a route to be followed, where alternative routes are available. It clearly appears from the record that protection to existing businesses, as well as convenience and highway safety factors were considered in the establishment of the limited-access facility in question. Appellants cannot prevail on their exception to finding No. 31.

Appellants claim that no hearing was conducted by the state highway board in connection with the limited-access aspect of the project, as required by 19 V.S.A. §222. Gordon Lane, highway engineer for the state highway department, testified that two hearings were held. Moreover, there is a presumption that public officers have properly discharged the duties of their office and have faithfully performed those matters with which they are charged. *White* v. *Hall,* 91 Vt. 57, 63, 99 Atl., 274; *In re B. A. Hunt,* 85 Vt. 345, 355, 82 Atl. 178; *In*

*re Hayden L. Waterhouse,* 125 Vt. 202-4, 212 A.2d 696. Appellants cannot prevail on this point.

By paragraph 4 of the order the trial court determined that the limited-access facility as a bypass around the Village of North Clarendon may be established. This is supported by the facts as found. See *Miller* v. *Miller,* 124 Vt. 76, 78, 197 A.2d 488; *Graham* v. *Slayton,* 122 Vt. 425, 431, 175 A.2d 809. The judgment order is without error.

*Judgment affirmed. Cause remanded.*

### On Request for Permission to Reargue

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

**Per Curiam** after an extension of time previously granted, the appellants Hunter have petitioned to reargue this appeal on the claim the Court overlooked certain issues of fact and law which should change the result previously reached. The main thrust of the motion is directed to claimed shortages in the consideration of the issue of necessity at the public hearings conducted by the state highway board required by 19 VSA § 222(c). It is there provided:

(c)    For the purpose of receiving suggestions and recommendations before expending public money for engineering and condemnation, before arriving at its judgment as required in paragraph (a) the board shall conduct a public hearing upon not less than thirty days' notice published in a newspaper having general circulation in the area affected and upon notice by mail to the legislative body of the municipalities affected and upon notice by registered mail to owners of lands and rights therein affected by the judgment.

The notice shall set forth the purpose for which the land or rights are desired and shall generally describe the improvement to be made.

At the hearing the board shall set forth its reasons for the selection of the route intended and shall hear and consider all objections, suggestions for changes and recommendations made by any person interested.

Following the hearing the board shall proceed to lay out the highway, and it shall cause to be surveyed the land to be taken or affected, giving due and proper consideration to the objections, suggestions and recommendations.

The explicit object of the hearings required by this section is to bring to the attention of the highway board the objections of the land-

owners, the municipalities involved and the public at large to the contemplated construction. The board must hear their suggestions and recommendations for changes in the proposed highway before the actual survey of the land proposed to be taken for the project.

■ When the appellants complain of the alleged inadequacy of the investigation and the failure of the highway board to make findings, they mistake the nature of the proceedings called for by section 222. They are exploratory and informative, but not judicial. The highway board is not conducting a trial or hearing as a court or judicial body. *Am. Oil Co.* v. *State Hwy. Bd.*, 122 Vt. 496, 501, 177 A.2d 358.

The deficiencies set out in the motion for reargument indicate the appellant conceives the public hearings to be judicial in character. On the question of necessity, the board's decision is essentially administrative, not judicial. Final adjudication to determine necessity is reserved to the special statutory tribunal created to hear and order necessity. 19 V.S.A. §225-7. Jurisdiction on the question of public necessity can be invoked only by petition of the board to a superior judge. 19 V.S.A. § 224. And on this question, the board participates only as litigant and interested party.

The points advanced in the motion for reargument concern administrative functions, preliminary to the adjudication of the issue of necessity. They are outside the scope of this appeal from the tribunal charged with first responsibility for decision on that crucial question.

*Request for leave to reargue denied. Let full entry go down.*