### State Highway Board v. Ralph L. Jackson, et al.

[276 A.2d 620]

No. 17-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 6, 1971

*James M. Jeffords,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, for the State.

*Richard F. Sullivan,* Rutland, for Wayne and Elsie Adams.

*Kinney & Carbine,* Rutland, for Russell F. Powers and Laura P. Billings.

*George A.* and *Dorothy Squier, pro se.*

*Abatiell & Abatiell,* Rutland, for Ciro and Zadora Della Corce.

*Bernard R. Dick,* Rutland, for Romeo and Paula Choiniere and Bo-Mac Corp.

**Keyser, J.** This is the same case reported in 128 Vt. 17, 258 A.2d 575 (1969). The plaintiff petitioned the Rutland County Court under 19 V.S.A. § 1861a to acquire property for limited access facilities on a section of U.S. Route 7 in the towns of Wallingford and Clarendon, known as project AP 019-2(50). This relocated portion is a divided four-lane highway extending north and south about 5.04 miles and was opened for public travel on November 15, 1967.

At the time new Route 7 was constructed, the state highway board did not have authority to establish, construct and maintain limited access facilities. Since then the legislature by

the enactment of 19 V.S.A. § 1861a granted such authority to the board "whenever the board with the approval of the governor decides that the protection of existing businesses or traffic conditions, present or future, will justify the special facilities." The board designated the highway in question as a limited access facility and such designation was approved by the governor.

The trial court at the first hearing of the case entered a judgment order upon its findings dismissing the petition. In that trial the court below stated that it was unable to, and did not, find that the evidence as to traffic conditions, present and future, justify a limited access facility. On appeal by the petitioner we held that "In the presence of the undisputed engineering testimony of the necessity, for reasons of safety, to convert the present highway to a limited access facility, the lower court's statement (*supra*) . . . is not supported by the record."

We reversed the judgment because of the shortage in the findings on the essential issue of public safety and remanded the cause so that it could be "reopened on this limited issue to receive further evidence on this point in the light of more recent experience." 258 A.2d at 580.

The court below on the remand, made findings of fact and issued its judgment order authorizing the highway board "to convert and make of the aforesaid highway a so-called limited access facility."

Several petitionees who are landowners affected by the proceeding have appealed from the judgment order with briefs filed by appellants Wayne and Elsie Adams and George A. and Dorothy M. Squier. The sole issue before us on the appeal is whether there is any evidence on the issue of public safety which reasonably supports the finding by the court that the section of new U.S. Route 7 in question may be established as a limited access facility by the highway board. The key to that issue is provided by Section 1861a, the pertinent part of which reads as follows:

"(a) The board with the approval of the governor, . . . may plan, designate, establish, construct, regulate, vacate, alter, improve, maintain and provide limited access facilities for public use wherever the board with the approval of the governor decides that the protection

of existing business *or traffic conditions, present or future, will justify the special facilities."* (Emphasis added). ·

Our well-established law is that a finding must stand if supported by any credible evidence, although there may be inconsistencies or even substantial evidence to the contrary. It is the trier of fact to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony. 12 V.S.A. § 2385; *Massucco* v. *College Corp.*, 127 Vt. 254, 247 A.2d 63 (1968). On review, all conflicts must be resolved against the party excepting to the finding, and, therefore, the fact that evidence is conflicting cannot avail the excepting party. *Barr's Estate* v. *Guay*, 127 Vt. 374, 379, 250 A.2d 512 (1969). And in considering the evidence the Supreme Court views it in the light most favorable to the findings. *Menard* v. *Nelson*, 127 Vt. 185, 186, 243 A.2d 779 (1968).

When the legislature enacted Chapter 17 of Title 19, it declared the policy of the state in Section 1861 to be as follows:

"The general assembly of the state of Vermont hereby finds that sections 1861–1872 of this title are necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare."

This is a clear declaration of policy under the very statutes which were enacted in order that highways like the one in question could be constructed and maintained.

The new section of U.S. 7 is a part of the arterial highway system designated by the General Assembly. The evidence shows that the project is a segment of a highway which the highway board, with the approval of the governor, has designated as an arterial highway from the Massachusetts line to Burlington. Such a highway is primarily for through traffic. The section north from Massachusetts to about the area of the Howard Johnson motel and restaurant in Rutland has been designated as a limited access facility. The court found that U.S. 7 north of the project is a limited access facility and when constructed, the highway south of the project will also be a limited access facility. The evidence also shows that a

40-mile stretch of highway from Rutland to Vergennes is also limited access.

The project was designed and constructed to safely carry the volume of traffic expected in 1986 at 60 miles per hour and had most of the features of a limited access facility.

The new route has eighteen private access points and eight public grade intersections. If converted to a limited access highway, these private access points would be eliminated and the grade intersections for the present would be controlled by holding lanes, turning lanes and other means. The eventual plan is to make the project completely limited access with interchanges at Pierce's corner (Route 103) and at the southerly end with no access in between. It is to be noted that this would make the highway comparable to our Interstate system on the east side of the state and would serve out-of-state traffic coming into Vermont on the west side from the south, west and north, as well as local traffic. A highway of this type limits the locations where traffic can enter and leave the road.

During trial emphasis by testimony was placed on the little use made of the eighteen private driveways to property abutting U.S. 7 and its negative effect as a traffic hazard. This, of course, is not the real problem or the controlling factor. These driveways at present are used mostly for farming and cutting of hay.

Gordon Lane, an engineer employed by the highway department since 1933 and in charge of highway survey and design since 1957, testified with regard to the topography of the land along the highway and its suitability for commercial and other purposes. He stated that there are pieces of property along the highway where access could be easily constructed with modern methods of grading and this, in his opinion, added up to some possible type of commercial development.

It is quite apparent from the evidence that there would be additional access points developed on the project and the creation of additional traffic hazards would not be in the public interest. It was Mr. Lane's opinion that the highway would be more hazardous if additional private entrances were to be created along the road because each entrance adds to the hazards. But Mr. Lane testified that with control features applied travel is not interrupted or endangered by

cars coming in or off at unexpected locations thus eliminating a potential source of danger to through traffic and the entering traffic.

It is a matter of common knowledge of which we can take judicial notice that a highway such as relocated U.S. 7 generates commercial activity along its borders. The resulting incoming and outgoing traffic on this route can only increase traffic hazards on such a high speed road. Depending upon the activities of the businesses, traffic to and from the road would be increased accordingly. The court found that this would cause a slow down in traffic and adversely affect the safety and efficiency of the highway which cost the state about $3,400,000.

The district highway engineer, John A. Durkee, testified that since the project was constructed five requests had been made already for driveways along the route. This evidence indicates that an interest has already begun to develop for additional private access driveways leading on and off the route for one purpose or another. Some of the private access points are by a gate because of their slight use. To get the gates removed, or to get a different type of access, the property owner would have to get a permit from the department. But, as Mr. Durkee testified, they are there for whatever business the property owner may have.

Mr. Durkee also testified that if a highway is not a limited access and a business like a motel or gas station asked for an access, a plan of the construction of the entrances and other data would be required. If it is found to be justified a permit is issued on a standard form and would contain all of the stipulations to be followed and the conditions upon which it was issued. And, in acting upon an application for a permit, the board could not deny reasonable ingress and egress to any property abutting the highway unless the highway is made limited access. 19 V.S.A. § 43; *Kelbro, Inc.* v. *Myrick*, 113 Vt. 64, 68, 30 A.2d 527 (1943).

The court did not find the following requested finding of the appellants, viz.—"12. The State of Vermont presently controls private access points to said highway and further expansion of existing private access points to said highway, if any."

They claim this finding would be upholding the "letter contract of easements" given by the highway board to the individual property owners and show the good faith and good will of the state in so doing. This refusal of the court was not error in view of the evidence and other findings. Furthermore, it was immaterial in view of 19 V.S.A. § 43 and the *Kelbro, Inc.* case, *supra,* as well as being unessential.

Engineer Lane further testified that limited access in his opinion is the most important feature of providing a safe highway. The road was designed with this in mind. He expressed the opinion that if the control features are applied to U.S. 7 by closing certain existing entrances, and positively building interchanges, it would be a safer highway if made a limited access facility. He also testified that "Gradually over a period of years, if limited access were not applied, you would have many of these entering drives, many conflicting points of traffic, which would tend to gradually slow the traffic down below the original designated speed, which, in my opinion, tends towards obsolescence." And, again, it was his opinion that limited access facilities are "in the order of two or three times" safer than non-limited access facilities and that the highway being considered here should be made a limited access facility.

The State also developed evidence from witness Arthur Goss, a civil engineer with the department for many years and its advanced planning engineer, on the question of converting this segment of U.S. 7 to a limited access facility. It was his opinion that to allow vehicles to come on the highway at various points would constitute a safety hazard and by elimination of as many conflicting points as possible would make the highway safer. The reason he gave for this was that "As an arterial highway —as a through highway—the motorists proceeding at 60 miles per hour does not expect cars coming in or out from the sideline to the side of the highway, he doesn't expect pedestrians, or even parked vehicles on a limited access-type highway." The witness also testified that the highway has a hazardous potential because of those private accesses and that elimination of such accesses would provide a safer road. He testified a further factor of safety, was the change in conditions confronting a motorist going onto a non-limited access highway to or from a limited access facility and this created a hazard.

Witness Goss testified he had made an analysis of the problem of access points on the road, and potential access points. It was his opinion that the highway presently is hazardous for the volume of traffic and the type of highway because any access point presents a hazardous location.

An employee of the highway department, Lynn Alden, works with studies relating to accidents. She made a study to compare the accident, injury and fatal rates on non-limited access roads versus limited access highways. The study involved a determination of such rates for this segment of U.S. 7 and the interstate from November 1967 through October 1969. The study showed an accident rate on the relocated U.S. 7 of 167 accidents per hundred million vehicle miles. Miss Alden testified that "This rate is lower than non-limited access, but we have no other limited access to compare it to except the interstate, and this is higher than interstate." The average rate given by the witness for the whole state system except the interstate was 277. It is evident that although relocated U.S. 7 is safer now than it was before construction, it could become comparable with the interstate in safety by becoming limited access and eliminating present and future private access points and any other hazards.

Witness Joseph Landrey, a civil engineer in charge of traffic studies and projections for the highway department, testified concerning the present and projected volume of traffic on this section of U.S. 7. His study showed a present average daily volume of 7,050 north of the junction of Routes 103 and U.S. 7 in both north and south bound lanes. Southerly of this junction the volume at present was approximately 3,440 vehicles per day. The traffic volume projected for the year 1990 for traffic south of the junction of Routes 103 and 7 was given as 6300 vehicles per day and the volume north of this junction was projected at 12,900 vehicles per day. He testified that this projected future traffic volume is based on historical patterns related to traffic which have existed for many years together with future estimates on population, motor vehicle registrations, motor fuel consumption and the number of licensed operators.

The appellants' witness, Harold A. Gesell, a consultant to traffic and personal services, testified he had made a study of the road within the last week. He said that he could "see no

problem with maintaining a high degree of safety on this road," and, that a lot of commercial establishments erected along this road in the future would have no definite effect on the road. He expressed the opinion that if all things were equal, a non-limited access highway, with cars coming in and out from various locations, is safer than a limited access highway. There are other variances between the testimony produced by the appellants and that given by witnesses of the state highway board. It was for the court to weigh and sift the evidence and determine the facts and, insofar as the evidence is conflicting, all conflicts are resolved against the excepting party. *Barr's Estate* v. *Guay, supra; Raymond* v. *Raymond,* 120 Vt. 87, 93, 132 A.2d 427 (1957).

The state developed its case around the testimony of its well-qualified engineers who possessed extensive experience and professional knowledge regarding the design and safety features of highways and traffic conditions thereon. Their opinions regarding present and future traffic conditions as related to public safety are grounded on statistical data developed from studies made by the department as well as on their special skill and knowledge. The opinions of these witnesses as well as those of Mr. Gesell are based on facts disclosed by the record notwithstanding the claim of the appellants to the contrary that those opinions are conjectural. The general rule that a witness must state only facts and not opinion is not a universal rule and is not applicable here. An exception to the rule permits a witness to give his opinion on matters of science, art or skill. *Richardson* v. *Persons,* 116 Vt. 413, 415, 77 A.2d 842 (1951).

Appellants Adams argue that Findings Nos. 11, 12, 13 and 16 are not based on any evidence in the case. These Findings Nos. 11–13 in brief state that the topography along the road is such as to encourage the establishment of businesses which will increase the necessity for additional access roads and at least to some degree create traffic hazards because the more off and on side road traffic, the greater the motoring hazard and potential for accidents. The claim of the appellants is not sustained. These findings are supported by the evidence of witnesses Lane and Goss as we have previously pointed out.

Finding No. 16 relates to traffic into and out of the Howard Johnson's Motel, Lodge and Restaurant on the east side of the project and finds that 12% of the traffic in front of this establishment northerly of the project either turn into or out of commercial driveways. We need only to point out that the necessity of the finding as a material factor in the court's decision is not demonstrated. *Cass-Warner Corp.* v. *Brickman,* 126 Vt. 329, 335, 229 A.2d 309 (1967).

■ Appellants Adams also argue that the safety of U.S. 7, because of its accident ratio per hundred million vehicle miles, shows the highway to be a safe highway presently and will become safer with the passage of time. We can only say that the trial court found otherwise. A careful search of the record discloses, as we have already noted, that there is evidence which fairly and reasonably tends to support this and the other material findings of the court. In this situation, the findings must stand. *Leno* v. *Meunier,* 125 Vt. 30, 34, 209 A.2d 485 (1965).

The contentions of appellants George A. Squire and wife relate to various findings of the court and are made upon argument which concerns the weight and credibility of the evidence. This, as we have already pointed out in the opinion, was for the trial court. No claim of error is otherwise urged and none is shown to exist.

■ 19 V.S.A. § 1861a, *supra,* clearly states the end to be accomplished, that is, whether "traffic conditions, present or future, will justify the special facilities." The legislature by the passage of Chapter 17 of Title 19 not only recognized but also declared the over-all necessity for limited access facilities and thus established an arterial highway to handle traffic on the western side of the state. It delegated the power to the state highway board to accomplish the end which it envisioned by the enactment of Chapter 17. Only reasonable necessity for the facility under present and future traffic conditions is required to exist regarding which "public safety has become the critical element." *Latchis* v. *State Highway Board,* 120 Vt. 120, 125, 134 A.2d 191 (1957).

In the *Latchis* case, we held—"Where the volume and nature of traffic is such that public safety requires under the

circumstances that the road be constructed, or reconstructed, at a given location, a reasonable necessity exists, and a taking of land is justified, if reasonable in the light of all the concurring circumstances." *Ibid.* See also *State Highway Board* v. *Coburn,* 125 Vt. 513, 517, 219 A.2d 582 (1966); *State Highway Board* v. *Pratt,* 127 Vt. 385, 393, 250 A.2d 726 (1969).

The court found that this project is reasonably necessary in the interest of public safety, efficiency, traffic control and convenience. The record demonstrates adequate and compelling evidence to support this finding and the judgment below must be affirmed.

*Judgment affirmed.*